# CHARLESTON.

BANK OF CLINCHBURG *v.* J. M. CARTER

(No. 5554)

Submitted May 4, 1926.     Decided May 18, 1926.

1. PRINCIPAL AND SURETY—*Duress Practiced by Holder on Maker of Note is Available as Defense to Surety Indorsing Instrument in Ignorance Thereof or of Facts Sufficient to Put Him on Inquiry.*

   Duress practiced by the holder upon the maker of a negotiable promissory note constitutes a defense available to the surety who has indorsed the instrument in ignorance of such duress, or of facts sufficient to put him on inquiry.   (p. 673.)

   Principal and Surety, 32 Cyc. p. 25.)

2. CONTRACTS—*Defense of Duress is Ordinarily Question for Jury, to be Determined From Facts and Circumstances of Particular Case.*

   The defense of duress is ordinarily a question for the jury to be determined from all the facts and circumstances in the particular case.   (p. 672.)

   (Contracts, 13 C. J. § 993.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by notice of motion for judgment on a note by the Bank of Clinchburg against J. M. Carter. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*French, Easley & Easley* and *James S. Kahle,* for plaintiff in error.

*C. B. Martin, W. W. Rogers* and *Robey Thompson,* for defendant in error.

LITZ, PRESIDENT:

This is an action by notice of motion for judgment on a certain promissory note, dated December 31, 1921, for $1540.00, executed by Carroll D. Carter as maker, and en-

dorsed by his father, J. M. Carter, payable to the order of J. M. Carter at the Bank of Clinchburg, Clinchburg, Virginia, six months after date. The defendant J. M. Carter prosecutes error to the judgment of the circuit court on a verdict in favor of plaintiff, Bank of Clinchburg, for $1809.50. Carroll D. Carter was not served with process and did not appear. His deposition was taken in Seattle, Washington, and read, on behalf of J. M. Carter who filed the plea of *non est factum* and special pleas alleging that the note sued on was procured from Carroll D. Carter, maker, by fraud and duress exercised by F. P. McConnell, president of the Bank, without knowledge on the part of J. M. Carter. He also plead the general issue.

In 1917, at the age of sixteen, Carroll D. Carter entered Emory and Henry College, at Emory, Virginia. Soon thereafter he became acquainted with one, Bascomb D. Akers, a young man five or six years older, who, about 1919, became cashier of the plaintiff, a small bank in a little town about twelve miles from the college. Akers solicited the account of young Carter, who was then engaged as the college printer, and an arrangement was made between them whereby this bank permitted Carter to borrow money upon his personal notes without other security, honoring overdrafts. When he left college in June, 1921, the bank then held his note for about $600.00, indorsed by his father, J. M. Carter, and Dr. J. Stuart French, president of the college, which covered certain college expenses and the cost of a printing apparatus. Also at that time he owed the bank, according to his estimate, between $450.00 and $500.00 additional, representing overdrafts on his account.

About December 31, 1921, McConnell telephoned from Abingdon, Va., to Carroll D. Carter, at Mosheim, Tennessee, according to McConnell, as follows:

> "I called young Carter up at Mosheim, Tennessee, on the telephone, and asked him if he knew how his account was at the Bank of Clinchburg, and he says 'It is overdrawn'. 'Well', I says, 'Akers has been arrested, the Cashier of the Bank

has been arrested, and is now in jail'. I says, 'It looks to me like you are in pretty serious trouble over there, and you better arrange some way to get this money to us', and he said, 'I haven't got the money', and I says, 'It will have to be arranged some way', and he says, 'If my father will endorse a note, will you accept it temporarily', and I told him I would, and he says, 'I will send you that note up tomorrow', and this is the note we received, and this is all the conversation that took place over the 'phone.''

Carroll D. Carter, testifying McConnell informed him that he had secured the arrest of Akers the night before for embezzling over $30,000 from the bank, and had a warrant also for the arrest of Carter as an accomplice, further says:

"He asked me the next thing if I knew how much money I had gotten from the bank. I told him the same as I have told you. He laughed and named a sum around $1540—$1532, as I remember—whatever the statement is is supposed 'to be correct. He told me *that itself was a criminal offense and that a warrant was drawn up for me; that the only way for me to avoid that warrant was to get a note immediately.* I told him my note was not worth anything. He said, 'You will *have to have* your father's name on this note and have it made immediately'. I told him I could not get my father's name on the note immediately, because he knew nothing about my accounts. He said, 'You can figure out whether it is best for him to sign the note or have his son—the son of a clergyman— *in the penitentiary.*' ''

Carter also states that McConnell threatened to have him in jail in twenty-four hours if the note with his father's signature was not forthcoming; and that before the completion of the telephone conversation he induced his father, who was nearby, to indorse a blank note, on the representation that the conversation was with reference to renewal of the above mentioned $600.00 note, and that the blank note would be filled out by him (as had been done previously) to take care of such renewal.

The assignments of error are based upon the refusal to give four instructions offered by defendant; the giving of three instructions by the court over defendant's objection; and the exclusion of the testimony of defendant, J. M. Carter, to the effect that he had indorsed the blank note upon the representation of Carroll D. Carter that it was a renewal of the $600.00 note and would be filled out accordingly, that he knew nothing of the alleged fraud and duress practiced by McConnell to secure his indorsement on the note until several weeks thereafter when his son confessed the details of the transaction, that he immediately went to Abingdon, Va., interviewed McConnell and told him what his son had confessed, stating also to McConnell that he had no intention of indorsing a note for that amount, and that he could not, and would not, pay it.

The first instruction given by the court to the jury in effect informed the jury that if they believed the testimony of Carroll D. Carter they should find for defendant; and the second, if the jury believed the evidence of McConnell they should find for plaintiff. The second instruction was erroneous as we believe it improperly deprived the jury of the right to conclude from the evidence of McConnell, and other evidence not in conflict therewith that he had influenced Carroll D. Carter to execute the note and secure the indorsement of J. M. Carter thereto by putting him in fear of prosecution. The fact that the son, by false statement, induced his father to indorse the note is a strong circumstance indicating that McConnell exercised duress over the maker.

A note obtained by the payee's threats to prosecute the maker criminally is because of such duress unenforceable in the hands of the payee. One who has overcome the mind and will of another for his own advantage under such circumstances is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts, without reference to the influences which moved them. 9 R. C. L. pp. 719, 720;

8 C. J. p. 761; *Galusha* v. *Sherman,* 105 Wis. 263, 47 L. R. A. 417.

While not in accordance with the general rule that the defense of duress is a personal defense available only to the person upon whom it is imposed, it is held in a majority of jurisdictions that duress practiced upon the maker of a note may also be taken advantage of by the surety who in ignorance thereof has indorsed the instrument. *Patterson* v. *Gibson,* 81 Ga. 802, 10 S. E. 9, 12 A. S. R. 356; *Graham* v. *Marks,* 98 Ga. 67, 25 S. E. 931; *Griffith* v. *Sitgreaves,* 90 Pa. St. 161; *Hazard* v. *Griswold,* 21 Fed. 178; Ann. Cas. 1913-D, note p. 1191, 1192; 9 R. C. L. pp. 729, 730; Daniel on Negotiable Ins., Vol. 2, 6th ed., p. 1467, sec. 1309.

There was no cause for the rejection of any of the four instructions offered by defendant, nor the exclusion of testimony of J. M. Carter showing that he had been induced by false representations of his son to indorse the note.

The judgment of the court will therefore be reversed, the verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*