## CHARLESTON.

CENTRAL ACCEPTANCE CORP. v. NASH BLUEFIELD MOTOR Co. et al.

(No. 5967)

Submitted September 13, 1927. Decided September 20, 1927.

1. TRIAL—*One Demurring to Evidence May Not Discredit Verity of Opponent's Testimony.*

   Upon demurrer to the evidence the demurrant will not be heard to discredit the verity of his opponent's testimony. (p. 178.)

   (Trial, 38 Cyc. p. 1543.)

2.  CONTRACTS—*What Constitutes Time for Victim of Threat to Liberate Himself Therefrom Depends on Personalities of, and Circumstances Surrounding, Parties.*

What constitutes ample time for the victim of a threat to liberate himself from its menace must depend upon the personalities of, and the circumstances surrounding, the parties in each case.   (p. 177.)

(Contracts, 13 C. J. § 319.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by notice of motion for judgment by the Central Acceptance Corporation against the Nash Bluefield Motor Company and others, in which defendant H. W. Speiden alone was served with process.  Judgment for defendant Speiden, and plaintiff brings error.

*Affirmed.*

·*Hartley Sanders,* for plaintiff in error.

*Sanders, Crockett, Fox & Sanders,* for defendant in error Speiden.

HATCHER, PRESIDENT:

This is a suit by notice of motion for judgment, instituted against the Motor Company, E. T. Stallard, H. W. Speiden and L. F. Adkins, to recover $9,558.88, as balance due on three notes signed by the Motor Company, and endorsed by the other three defendants.  Speiden is the only defendant upon whom process was served, and against whom judgment is sought.  In addition to a plea of the general issue, Speiden filed a special plea setting up duress.  Upon the trial the plaintiff demurred to Speiden's evidence, but the court overruled the demurrer and entered judgment for him.

Speiden was the vice president of the Motor Company, and Stallard was its general manager.  Speiden's evidence shows that a man named Grosman, who represented the plaintiff, reported to Speiden that the Motor Company had "double financed" some of its cars in defraud of the plaintiff's rights, but what were those rights does not appear.

Speiden answered Grosman that he had nothing personally to do with the business of the Motor Company, that he knew nothing of the office work of the Company, and that Grosman should see Stallard, as Stallard was the one with whom to make settlement. Grosman replied that he had seen Stallard, that Speiden did not seem to understand the seriousness of "double financing" cars; that it was a criminal offense, and that as an officer of the Company Speiden was criminally responsible for the conduct of the Company's manager. Speiden questioned Stallard in regard to Grosman's charge, and Stallard admitted that he had "swapped motor numbers and double financed some of the cars." Grosman then said to Speiden, "Unless I can get a satisfactory adjustment, I am going to institute criminal prosecution." Speiden's endorsement of the notes was the adjustment satisfactory to Grosman, and such endorsement was given, according to Speiden, solely because he believed that if he refused it the plaintiff would institute a criminal prosecution against him. Grosman did not deny any of the statements attributed to him by Speiden.

The plaintiff asserts the following reasons why the trial court should have found in its favor: (1) There is material variance between the special plea of duress and defendant's evidence; (2) Speiden endorsed the notes with full knowledge of all the facts, and after he had ample time for consultation and reflection; and (3) because of Speiden's failure to call as a witness C. R. Davant who was present when Speiden was approached by Grosman.

We shall advert to the points raised by the plaintiff in the order numbered.

1. The special plea of duress charges that Speiden endorsed the note solely because of the threat made by Grosman to institute criminal proceedings against him. The defendant did not testify to a direct threat to prosecute him. Plaintiff contends that the evidence is therefore at variance with the allegation.

Grosman made the statement to Speiden heretofore detailed for the purpose of giving Speiden the impression that he personally would be prosecuted unless the matter was

adjusted.   The effect was the same on Speiden as if Grosman had said: "Speiden, I will institute a criminal prosecution against you unless you endorse the notes".   That effect is the one Grosman intended to produce.   Thus by indirection, he menaced Speiden as effectively as if he had done so directly, and we see no material variance between the pleading and the proof.

2.  About two and one-half hours intervened between Speiden's conversation with Grosman and his endorsement of the notes.   Plaintiff contends that this interval brings the case within the rule announced in *Clement* v. *Mercantile Co.,* 172 Mich. 243, to-wit:   "As a rule duress cannot prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time for investigation and opportunity for consideration, consultation and reflection."   There is no objection to the rule announced in the *Michigan* case, but when does it apply?   What is ample time?   In that case the period between the threat and the act which the defendant attributed to the threat was of such duration that the court could judicially declare it ample to free the defendant from the menace and to enable him to regain control of his emotions.   Two and one-half hours was not ample for that purpose in this case.   During that period Speiden did consult with a friend, C. I. Cheney, who told him that he was not criminally liable for the acts of Stallard.   Cheney testified, however, that he saw his advice made no impression on Speiden, who was at the time "very nervous, excited and agitated".   Speiden testified that he had no other reason in the world for endorsing the notes, except to stay the criminal proceedings which Grosman had threatened.   The evidence therefore shows that the interval had not liberated Speiden from the influence of Grosman's threat at the time he endorsed the notes.   What constitutes *ample time* in such case, must necessarily vary with the individual and the circumstances surrounding him.

> "The rule as it now exists is that the question of duress is one of fact in the particular case, to be determined on consideration of the surrounding circumstances, such as age, sex, capacity, situation,

and relation of the parties; and that duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist. The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will.''

> 13 C. J. 402, sec. 319; accord, 9 R. C. L., p. 715, sec. 7.

3. In charging Speiden with failure to summon Davant, counsel has evidently overlooked the position in which plaintiff voluntarily placed itself by demurring to the evidence. By that demurrer, it admitted the truth of Speiden's evidence. After such admission, it cannot be permitted to discredit that evidence. An admitted truth needs no confirmation.

The record justifies the ruling of the lower court, and it will accordingly be

*Affirmed.*