[No. 3101-2.   Division Two.   May 31, 1979.]

ERNEST J. BARKER, ET AL, *Appellants,* v. WALTER HOGAN ENTERPRISES, INC., *Respondent.*

*Lawrence M. Ross,* for appellant.

*David R. Tuell* (of *Tuell & Anderson*), for respondent.

PETRIE, J.—This case illustrates the fine line of distinction between effectively "driving a hard bargain" and entering into a contract voidable because of "business compulsion." Plaintiff appeals from summary judgment dismissing his complaint for money due. We affirm.

In 1967 defendant Hogan leased to plaintiff Barker for 10 years ending July 1, 1977, a certain portion of a shopping center to be used as a tavern. No provision was made for any renewal or extension. The lease provided in part:

> Lessee agrees to pay 50% of cost of additional septic System to be installed as required by King County Sanitation Dept.

It is uncontroverted that Barker paid for one-half of the cost of septic system installations made in 1967. Subsequently, "a second and separate septic tank installation" was made during the term of the lease at the direction of King County Sanitation Department. The record does not reveal precisely when that additional installation was made, and there is an apparent fact dispute as to whether those additional changes were performed "as originally discussed by the Sanitation Department in 1967" or whether they

were required "because of use of the system by other additional and new tenants of the Defendant." In any event, despite Hogan's demand for payment of one–half of the cost of the additional installation, Barker failed to pay until the parties negotiated and entered into a new lease in April 1977.

The circumstances which preceded the execution of this new lease provide the backdrop for this lawsuit. During the latter part of 1976, Barker entered into negotiations with a third party to sell his tavern business. The third party refused to purchase the business unless he could be assured of a lease "for several years." Hogan refused to enter into a new or extension lease without receiving 50 percent of the cost of the additional septic system installation. Barker conceded the amount demanded and authorized the tavern sale escrow agent to disburse said sum to Hogan "as a condition precedent to the receipt of the lease agreement extended to the third party involved."

Barker filed his complaint alleging that he had been "wrongfully and tortuously [sic] compelled to pay" because otherwise he "would have been prevented from selling" his tavern business. Under the foregoing fact pattern, the trial court granted Hogan's motion for summary judgment of dismissal. Barker obviously contends that he was the victim of business compulsion and that his agreement to the new lease was only an *ostensible* manifestation of his assent to the payment of 50 percent of the cost of the additional septic system.

We need not explore all the ramifications of the doctrine of business compulsion. It is a species of duress involving involuntary action in which one is compelled to act in such a manner that either he suffers a serious business loss or he is compelled to make a monetary payment to his detriment. *Starks v. Field,* 198 Wash. 593, 89 P.2d 513 (1939). Nevertheless, it has been said wisely that contracts made under stress are a daily occurrence, and if such

urgency is to affect their validity, no one could safely negotiate with a party who finds himself in difficulty by virtue of financial adversities. *Starks v. Field, supra.*

Thus, the key elements to the doctrine revolve around the meaning of the words "involuntary" and "compelled." Implicit in both words is the concept that the immediacy of the situation renders impractical any court action by which the victim might avoid the burden of either of the detrimental choices. *See Sunset Copper Co. v. Black,* 115 Wash. 132, 196 P. 640 (1921). Accordingly, in this jurisdiction, the doctrine of business compulsion based on the theory of potentially serious business loss imposed by oppressive conduct can be successfully invoked only if the "victim" can prove both that the offending party applied the immediate pressure and also that he caused or contributed to the underlying circumstances which led to the victim's vulnerability. *Puget Sound Power & Light Co. v. Shulman,* 84 Wn.2d 433, 526 P.2d 1210 (1974). *See* 50 Wash. L. Rev. 960, 973 (1975).

In the case at bench, the underlying circumstances which created Barker's vulnerability were caused by the normal and expected termination of his 10–year lease without any contractual basis for renewal on any terms, coupled with his unilateral attempts to sell his business and the conditions of sale imposed by his buyer. In no way did Hogan cause or contribute to those underlying circumstances. We hold the trial court correctly granted Hogan's motion for summary judgment of dismissal.

Judgment affirmed.

PEARSON, C.J., and SOULE, J., concur.