Hillsborough
No. 81-233

# KING ENTERPRISES

## v.

## MANCHESTER WATER WORKS

December 10, 1982

*James M. Winston*, of Manchester, by brief and orally, for the plaintiff.

*Elmer T. Bourque*, city solicitor (*Thomas R. Clark* on the brief and orally), for the defendant.

PER CURIAM  The plaintiff, King Enterprises, appeals from a Superior Court (*DiClerico*, J.) decision denying its motion to retract docket markings relating to a settlement agreement with the defendant, Manchester Water Works. We affirm.

The plaintiff, an owner of real property in the city of Manchester, obtained from the city a zoning variance to construct an apartment complex in an area designated for single-family housing. The variance was conditioned upon the plaintiff working out proper arrangements with the defendant in order to insure an adequate water supply at the complex.

The plaintiff began construction of the complex. In early May 1979, the plaintiff requested that the defendant provide water to the complex, which was then in the process of being completed. The defendant responded by letter and explained that the existing system of water mains was insufficient to supply the needs of the apartment complex, and that a project was underway to upgrade the facilities. The letter requested the plaintiff to pay an assessment of $10,600 prior to the connection of the service, to make subsequent payments of $20,000, and to agree to hold the defendant harmless in the event of a fire loss due to inadequate water pressure. The plaintiff refused to accept these conditions, and negotiations between the parties broke off shortly thereafter. In early June, the plaintiff brought a bill in equity asking the court either to compel the defendant to connect the water service permanently or, in the alternative, to order a temporary connection of service pending a full hearing on the merits. The Superior Court (*Souter*, J.) declined to issue temporary relief.

The parties agreed to renew negotiations and on June 20, 1979, they reached a settlement with counsel present. The settlement, which did not contain a "hold harmless" clause, provided that the plaintiff would pay the city a $6,000 assessment initially, $10,000 upon the start of the first phase of the water main construction, and $10,000 upon the construction of additional water mains. As a result of the settlement, the pending action was dismissed without prejudice and docket markings were filed accordingly on July 27, 1979.

In June 1980, the city started construction of the water main and demanded payment pursuant to the settlement agreement. The plaintiff refused to make payment, and on November 4, 1980, filed a motion to retract the docket markings, claiming that the settlement was invalid because it was a product of duress resulting from the plaintiff's exigent need for water service and the defendant's wrongful withholding of such service. The Trial Court (*DiClerico*, J.) denied the motion to retract, and the plaintiff appealed to this court.

■ The plaintiff essentially argues that the trial court committed reversible error when it failed to find that the settlement was a product of duress. We disagree. Although this court has long recognized the invalidity of contracts resulting from business compulsion or duress, we have required that a plaintiff establish several factual elements to support such a claim. *See Cheshire Oil Co. v. Springfield Realty Corp.*, 118 N.H. 232, 236–38, 385 A.2d 835,

839–40 (1978); *Morrill v. Bank*, 90 N.H. 358, 365, 9 A.2d 519, 525 (1939). To establish business compulsion, a plaintiff must show that he involuntarily accepted the other party's terms, that the coercive circumstances were the result of the other party's acts, that the pressure exerted by the other party was wrongful, and that under the circumstances the plaintiff had no alternative but to accept the other party's terms. *Cheshire Oil Co. v. Springfield Realty Corp.*, 118 N.H. at 236–38, 385 A.2d at 839.

██ The record in this case reveals that the plaintiff failed to satisfy any of the requirements of duress. First, the record shows that the plaintiff's acceptance of the settlement was not dictated by the defendant, but rather was a product of free and voluntary negotiations. As noted above, the negotiations resulted in the reduction of the plaintiff's initial assessment and the elimination of the "hold harmless" clause. The voluntariness of the settlement is thus evidenced by the fact that the settlement terms were significantly more favorable to the plaintiff than the terms originally proposed by the defendant.

██ Second, the record shows that the circumstances surrounding the settlement were not attributable to the defendant. The plaintiff received its zoning variance subject to working out the proper arrangements with the defendant, and the terms of the variance acted as notice that some concern existed about the adequacy of the water supply in the area. Despite this fact the plaintiff continued construction of the apartment complex until its need for water had allegedly become acute, and only then did it contact the defendant. Thus, the circumstances that created the allegedly acute need were a direct result of the plaintiff's failure to contact the defendant and make preparations at an earlier date.

██ ██ Third, the facts in this case do not substantiate a finding of wrongfulness on the defendant's part. The plaintiff claims that the defendant acted wrongfully because it had no right to precondition the establishment of water service upon the payment of an assessment or upon the execution of a "hold harmless" agreement. We need not discuss the alleged wrongfulness of the "hold harmless" clause because the defendant·never in fact imposed this condition. This court has upheld the right of a city to assess a landowner a portion of the cost of public improvements so long as the assessment bore some reasonable relationship to the benefit conferred upon the land. *See Seal Tanning Co. v. City of Manchester*, 118 N.H. 693, 699, 393 A.2d 1382, 1385–86 (1978); *Manchester v. Straw*, 86 N.H. 390, 392, 169 A. 592, 593 (1933). In this case the city's need to upgrade

the water facilities in the area was, at least in part, due to the construction of the plaintiff's apartment complex. The plaintiff does not dispute the fact that the improvements were needed, nor does it claim that its property does not benefit from the improvements. Thus the city was not wrongful in demanding payment of the assessment.

██ Finally, it is clear that the plaintiff had other avenues open to it both at law and in equity. Despite the denial of temporary relief in June 1979, the plaintiff certainly could have continued to seek redress in court. *See Cheshire Oil Co. v. Springfield Realty Corp.*, 118 N.H. at 238, 385 A.2d at 839. The plaintiff, however, chose to disregard this alternative and to settle the case instead.

██ Whether the facts establish the elements of duress in a particular case is an issue for the trial court, and the trial court's findings will not be disturbed unless unreasonable. *Id.*, 385 A.2d at 839–40. In view of the facts discussed above, we hold that the trial court reasonably found that the plaintiff had failed to prove the elements of duress.

*Affirmed.*

KING, C.J., did not sit.