384 S.E.2d 139

**MACHINERY HAULING, INC.**

v.

**STEEL OF WEST VIRGINIA and Robert Bunting.**

**No. CC987.**

Supreme Court of Appeals of West Virginia.

July 27, 1989.

Fred B. Westfall, Jr., Huddleston, Bolen, Beatty Porter & Copen, Huntington, for Steel of WV and Robert Bunting.

James A. Colburn, Baer, Robinson & Colburn, Huntington, for Machinery Hauling.

MILLER, Justice:

In this case, the Cabell County Circuit Court certifies questions concerning the effect of threats made by one party for the purpose of inducing contract concessions from the other. We consider today whether, and under what circumstances, such threats are actionable.

We restate the facts of the case as they appear in the complaint. Machinery Hauling, Inc., the plaintiff below, is a West Virginia corporation whose principal business is the transport of freight. In January, 1988, the defendant, Steel of West Virginia (Steel), contracted with the plaintiff to transport seventeen loads of steel product to Shelby Steel, Inc. (Shelby), a firm located in Louisville, Kentucky. When delivery was nearly completed, Steel informed the plaintiff that the product was not of merchantable quality and that Shelby had rejected it.

Steel orally directed the plaintiff to return the last three loads of the product to Steel's plant in Huntington, West Virginia. Shortly thereafter, Robert Bunting, an agent and employee of Steel, instructed the plaintiff to pay to Steel the sum of $31,000, the price of the undelivered loads, "or else [Steel] would cease to do business with the [p]laintiff." In its complaint, the plaintiff avers that Steel and Bunting "negligently attempted to extort money from the [p]laintiff" by their joint threat to sever business relations unless payment for the defective product was made. Loss of business that resulted from this threat was claimed to have been in excess of $1,000,000 per year.

The plaintiff filed suit in the Circuit Court of Cabell County against Steel and Bunting, seeking monetary damages for their "extortionate demands." The circuit court concluded that threats against business interests may in some circumstances be actionable, but that the threats made by the defendants were not.

■ We are initially confronted with the parties' disagreement over the legal theory that applies to this situation. The plaintiff argues that there is a cause of action under our criminal extortion statute, W.Va.Code, 61–2–13.[1] Particular reliance is placed on

1. W.Va.Code, 61–2–13, provides:

"If any person threaten injury to the character, person or property of another person, or to the character, person or property of his wife or child, or to accuse him or them of any offense, and thereby extort money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a felony, and,

upon conviction, shall be confined in the penitentiary not less than one nor more than five years. And if any person make such threat of injury or accusation of an offense as herein set forth, but fail thereby to extort money, pecuniary benefit, or any bond, note or other evidence of debt, he shall be guilty of a misdemeanor, and, upon conviction, shall be con-

*Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980), where we formulated a general rule with regard to permitting a private cause of action for the violation of a statute.[2] Reliance is also placed on W.Va.Code, 55–7–9, which provides: "Any person injured by the violation of a statute may recover from the offender such damages as he may sustain by reason of the violation. . . ."[3] *See Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981).

The defendants, on the other hand, argue that there is no general authority that recognizes the right to recover civil damages for extortion, citing *Bass v. Morgan, Lewis & Bockius*, 516 So.2d 1011 (Fla.App.1987), *review denied*, 525 So.2d 876 (Fla.1988), and several cases from other jurisdictions cited therein. However, in these cases, there was no actual economic loss.[4]

We find few cases that analyze recovery in this type of situation from the perspective of an implied civil cause of action arising from a criminal extortion statute.[5] Furthermore, since there was no threat in the legal sense, the facts would not appear to come within the statutory language of a threatened injury to the "character, person or property of another person." W.Va. Code, 61–2–13. In *Black's Law Dictionary* 1327 (5th ed.1979), a "threat" is defined as "[a] declaration of an intention to injure another or his property by some unlawful act." *Iden v. Adrian Buckhannon Bank*, 661 F.Supp. 234 (N.D.W.Va. 1987), *modified*, 841 F.2d 1122 (4th Cir. 1988); *Schott v. People*, 174 Colo. 15, 482 P.2d 101 (1971); *State v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609 (1975). As we discuss in more detail later, the plaintiff had no continuing contract with Steel. As a consequence, Steel was free to place its haulage business wherever it chose. Its statement to the plaintiff did not constitute an unlawful act.

The more common analysis proceeds under a theory of business or economic loss. In the early common law, duress *per minas*, i.e., by threats, was available to void a contract where the threat involved impris-

---

fined in jail not less than two nor more than twelve months and fined not less than fifty nor more than five hundred dollars."

**2.** Syllabus Point 1 of *Hurley* states:

"The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purpose of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

**3.** The full text of W.Va.Code, 55–7–9, is: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

**4.** *Bass* involved a suit for compensatory and punitive damages based on a letter which was claimed to violate the criminal extortion statute. The case was disposed of in a short per curiam

opinion. Its discussion of this point was contained in note 1, 516 So.2d at 1011, as follows:

"Similarly, Bass does not contend that there is any common law action for damages based upon allegedly extortionate conduct. In fact, it is clear that none exists. *Leventhal v. Dockser*, 361 Mass. 894, 282 N.E.2d 680 (1972); *Blaz v. Molin Concrete Products Co.*, 309 Minn. 382, 244 N.W.2d 277 (1976); see *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96 (Tenn.Ct.App.1983)."

The *Leventhal* case was also a per curiam opinion which contained a one-sentence statement, citing no authority, to the effect that "counts described as being for 'extortion' and for 'coercion and duress' do not state facts supporting any recognized civil cause of action. . . ." 361 Mass. at 894, 282 N.E.2d at 681. *Blaz* dealt with a cause of action for false imprisonment, while *Wykle* involved a suit for malicious prosecution.

**5.** *See Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141 (2d Cir.1986) (assuming if implied cause of action possible under New York's extortion statute, conduct did not constitute extortion); *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir.1984) (applying civil RICO action to defendant's claimed extortion activities on a building lease); *Iden v. Adrian Buckhannon Bank*, 661 F.Supp. 234 (N.D.W.Va.1987), *modified*, 841 F.2d 1122 (4th Cir.1988) (no extortion on bank's requiring additional collateral on refinancing of existing loan).

onment, mayhem, or loss of life or limb. *Restatement (Second) of Torts* § 871, comment f (1979); 25 Am.Jur.2d *Duress & Undue Influence* § 11 (1966). Through the years, there has been a steady expansion of duress principle such that direct dire harm is no longer essential, the focus instead being on whether the threat overbears the exercise of free will. Professor Williston, in discussing the status of business compulsion, has identified two basic elements: (1) the party who asserts business compulsion "must show that he has been the victim of a wrongful or unlawful act or threat," and (2) "[s]uch act or threat must be one which deprives the victim of his unfettered will." 13 *Williston on Contracts* § 1617 at 704 (1970).[6]

■ Recently, courts have tended to avoid the term "free will" as applied to the victim, but instead have utilized the concept that the victim had "no reasonable alternative." This is found in Section 175(1) of the *Restatement (Second) of Contracts* (1981): "If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." A more difficult issue is determining what type of threat is sufficient to invoke the rule. Courts tend to use as a shorthand summary, words such as "wrongful," "oppressive," or "unconscionable" to describe conduct, but the complexity of the term "threat" is demonstrated in Section 176 of the *Restatement*.[7] The con-

cept of "economic or business duress" may be generally stated as follows: Where the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss.[8] *See, e.g., Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15 (Alaska 1978); *Frank Culver Elec., Inc. v. Jorgenson*, 136 Ariz. 76, 664 P.2d 226 (App. 1983); *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal.App.3d 1154, 204 Cal. Rptr. 86 (1984); *Charter Medical Management Co. v. Ware Manor, Inc.*, 159 Ga. App. 378, 283 S.E.2d 330 (1981); *Herget Nat'l Bank of Pekin v. Theede*, 181 Ill. App.3d 1053, 130 Ill.Dec. 780, 537 N.E.2d 1109 (1989); *First Data Resources, Inc. v. Omaha Steaks Int'l, Inc.*, 209 Neb. 327, 307 N.W.2d 790 (1981); *King Enterprises v. Manchester Water Works*, 122 N.H. 1011, 453 A.2d 1276 (1982); *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 93 N.J. 153, 459 A.2d 1163, *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983); *805 Third Ave. Co. v. M.W. Realty Associates*, 58 N.Y.2d 447, 461 N.Y.S.2d 778, 448 N.E.2d 445 (1983); *Oregon Bank v. Nautilus Crane & Equip. Corp.*, 68 Or.App. 131, 683 P.2d 95 (1984); *Barker v. Walter Hogan Enterprises, Inc.*, 23 Wash.App. 450, 596 P.2d 1359 (1979). *See generally, Annot.*, 30 A.L.R.4th 294

---

**6.** As to commentators' views on economic duress, *see, e.g.*, Dawson, *Economic Duress—An Essay in Perspective*, 45 Mich.L.Rev. 253 (1947); Dalzell, *Duress by Economic Pressure I*, 20 N.C.L.Rev. 237 (1942); Dalzell, *Duress by Economic Pressure II*, 20 N.C.L.Rev. 341 (1942).

**7.** Section 176 of the *Restatement (Second) of Contracts* provides:

"(1) A threat is improper if
"(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property,
"(b) what is threatened is a criminal prosecution,
"(c) what is threatened is the use of civil process and the threat is made in bad faith, or
"(d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.

"(2) A threat is improper if the resulting exchange is not on fair terms, and
"(a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,
"(b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or
"(c) what is threatened is otherwise a use of power for illegitimate ends."

**8.** Section 70 of the *Restatement of Restitution* (1937) provides:
"A person who has conferred a benefit upon another as the result of a transaction which is void or voidable because of duress or undue influence, is entitled to restitution under the same conditions as if the benefit had been conferred as the result of fraud."

(1984) (duress in employer-employee releases); *Annot.,* 12 A.L.R.4th 1262 (1982) (duress in sale of real property); *Annot.,* 9 A.L.R.4th 942 (1981) (duress in refusal to pay debt); *Annot.,* 79 A.L.R.3d 598 (1977) (duress in promissory notes).

Furthermore, while economic duress principles are more prevalent in contract cases, they are not limited solely to this area.[9] Some courts have proceeded to analyze economic duress cases in terms of a tort theory. Under this theory, the duty is deemed to be the reasonable use of the superior economic power of the defendant. The breach is using such power unlawfully or unreasonably. The proximate cause is shown by the fact that the victim had no reasonable recourse but to acquiesce in the unlawful conduct of the defendant and is damaged thereby. *E.g., Pecos Constr. Co. v. Mortgage Inv. Co. of El Paso,* 80 N.M. 680, 459 P.2d 842 (1969); *Housing Auth. of City of Dallas v. Hubbell,* 325 S.W.2d 880 (Tex.Civ.App.1959); *Wurtz v. Fleischman,* 89 Wis.2d 291, 278 N.W.2d 266 (1979), *rev'd on other grounds,* 97 Wis.2d 100, 293 N.W.2d 155 (1980). *See also* Note, *Economic Duress After the Demise of Free Will Theory: A Proposed Tort Analysis,* 53 Iowa L.Rev. 892 (1968). It is apparent that this tort theory is not substantially different from the economic duress theory under a contract analysis.

In several cases, we have utilized what amounts to a "business compulsion" analysis, although we characterized it only as "duress." Our earliest case is *West Virginia Transp. Co. v. Sweetzer,* 25 W.Va. 434 (1885), where the defendant purchased quantities of oil in northern West Virginia and attempted to transport the same to market. The sole outlet for the oil was the plaintiff's railroad. Even though the freight charges made by the plaintiff were in excess of that authorized by statute, the defendant paid the charges so as to ensure delivery of the oil. When the plaintiff sued to recover the unpaid freight charges, the defendant counterclaimed to recover the excess charges. We summarized the cases from other jurisdictions and found that the overpayments were made by the defendant under duress:

> "[W]hen the shipper was one whose business could not be successfully carried on without frequent use of this identical railroad for transportation purposes, then, ... in making over-payments for freight on the demand of the railroad company he should be regarded as making them under a species of moral duress, and such payments should be regarded as involuntary, and he should in an action of *assumpsit* for money had and received be allowed to recover back of the railroad company what he had paid in excess of legal charges[.]"   25 W.Va. at 461.

Much the same principles were applied in *Central Acceptance Corp. v. Nash Bluefield Motor Co.,* 104 W.Va. 174, 139 S.E. 654 (1927). There, the plaintiff sought to collect on several notes executed by the motor company and personally indorsed by the defendant, Speiden. Speiden claimed he had been coerced into signing the notes because an agent of the plaintiff had advised him that the manager of the car company had illegally "double financed" some cars and had threatened Speiden with criminal prosecution if he did not indorse the notes. In finding duress in *Central Acceptance Corp.,* 104 W.Va. at 177–78, 139 S.E. at 656, we quoted from 13 C.J. § 319 at 402 (1917):

> " '[T]he question of duress is one of fact in the particular case, to be determined on consideration of the surrounding circumstances, such as age, sex, capacity, situation, and relation of the parties; and that duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one

---

**9.** *E.g., Reiver v. Murdoch & Walsh, P.A.,* 625 F.Supp. 998 (D.C.Del.1985) (threats of termination of at-will employee to obtain release of already accrued benefits could form basis of economic duress); *Housing Auth. of City of Dallas v. Hubbell,* 325 S.W.2d 880 (Tex.Civ.App.

1959) (subcontractor having no contract with housing authority could recover for economic coercion for being required to apply two coats of paint at no extra cost instead of one coat as required in specifications).

party to the transaction is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist. The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear of which made it impossible for him to exercise his own free will.' "

See also *First Nat'l Bank of Peterstown v. Hansbarger,* 129 W.Va. 418, 40 S.E.2d 822 (1946) (no duress found in procurement of accommodation endorsements); *Bank of Clinchburg v. Carter,* 101 W.Va. 669, 133 S.E. 370 (1926) (duress found as to accommodation endorser).[10]

■ While we recognize the concept of business or economic duress, we do not find it exists in this case. There was no continuing contract between the plaintiff and the defendants. Thus, the demand by the defendants that the plaintiff pay $31,-000 for the defective steel was not coupled with a threat to terminate an existing contract. Furthermore, the plaintiff did not accede to the defendants' demand and pay over the money.

The plaintiff's claim, stripped to its essentials, is that it has been deprived of its future prospects of doing business with the defendants. However, this future expectancy is not a legal right on which the plaintiff can anchor a claim of economic duress. The claim here is similar to that in *Oregon Bank v. Nautilus Crane & Equip. Corp., supra,* where an equipment dealer contended that its dealer agreement had been coerced. This was based on the premise that if the dealer had not obtained the equipment, it would have gone out of business. The court disposed of this argument as follows:

"Here, defendant has alleged only that NCI threatened to cease doing business with it if Gordon did not sign the agreement and that defendant would have gone out of business but for NCI's supply of cranes. It is well established, however, that threats to do what the threatening person had a legal right to do does not constitute duress. *Wurtz v. Fleischman,* 97 Wis.2d 100, 293 N.W.2d 155, 160 (1980)." 68 Or.App. at 143, 683 P.2d at 103.

See *805 Third Avenue Co. v. M.W. Realty Associates,* 58 N.Y.2d at 453, 461 N.Y.S.2d at 781, 448 N.E.2d at 448 ("[A] party cannot be guilty of economic duress for refusing to do that which it is not legally required to do.").

Finally, there appears to be general acknowledgement that duress is not shown because one party to the contract has driven a hard bargain or that market or other conditions now make the contract more difficult to perform by one of the parties or that financial circumstances may have caused one party to make concessions.[11] *E.g., Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc., supra; Production Credit Ass'n of Minot v. Geving,* 218 N.W.2d 185 (N.D.1974); 13 *Williston, supra* at § 1617 at 708.

The questions certified to us by the Cabell County Circuit Court are, therefore, answered, and this case is dismissed from the docket.

**10.** In a noncontractual setting, *Boggs v. Greenbrier Grocery Co.,* 53 W.Va. 536, 44 S.E. 777 (1903), we appeared to recognize a duress theory where the plaintiff was forced to release a lien in favor of the defendant's subordinate lien by the defendant's threat to have the plaintiff's son arrested on a felony. *See also Carroll v. Fetty,* 121 W.Va. 215, 2 S.E.2d 521, *cert. denied,* 308 U.S. 571, 60 S.Ct. 85, 84 L.Ed. 479 (1939) (duress might be shown to void release of wrongful death action).

**11.** We do not imply from this statement that the decision of the Supreme Court of Alaska in *Totem Marine Tug & Barge, Inc. v. Alyeska Pipe-line Serv. Co., supra,* is incorrect. There, Alyeska owed between $260,000 to $300,000 to Totem, a small delivery company. Alyeska delayed payment on this obligation until Totem became severely impaired financially. To avoid bankruptcy, Totem accepted a $97,500 settlement. Totem then sued to obtain the balance due, claiming that the settlement had been coerced through economic duress. The case was dismissed on summary judgment, but the Supreme Court reversed, holding that there were genuine issues of fact on the economic duress issue.

Certified questions answered and dismissed.