# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Joseph E. Swiger,**
**Plaintiff Below, Petitioner**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-1109** (Monongalia 10-C-807)

**Purnel L. Jones, Jr., JJK Mineral Company, LLC,**
**Venable Royalty, LTD, and Venro, LTD,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Joseph E. Swiger, by counsel Norman T. Daniels and John F. Loehr, appeals the Circuit Court of Monongalia County's August 7, 2012, order granting respondents' motions to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Respondents Purnel L. Jones, Jr., and JJK Mineral Company, LLC, by counsel James A. Walls and Debra Lee Hovatter, filed a response. Respondents Venable Royalty, LTD, and Venro, LTD, by counsel Charles C. Wise III, filed a summary response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1995, petitioner entered into an agreement with Patricia and Ao Wang, defendants below,[1] to purchase all of their oil and gas interests in West Virginia and Pennsylvania and all of their common stock in two West Virginia corporations, Telluric Corporation and Rock Camp Oil Company, Inc. Patricia Wang, a resident of North Carolina, inherited this property and stock after her father died. In December of 1995, the Wangs executed nine deeds conveying various mineral interests to petitioner, which spanned nine different counties over the two states. Petitioner did not record any of the deeds at that time.

Respondent Purnel L. Jones, Jr. ("Jones") is the principal of Respondent JJK Mineral Company ("JJK").[2] In May of 2010, Jones/JJK approached Mrs. Wang to purchase her mineral interests with no knowledge of the 1995 conveyance to petitioner.  On May 17, 2010, the Wangs

---

[1]As the circuit court's dismissal applied only to the above-styled respondents, the Wangs are not parties to this appeal.

[2]For the purposes of this decision, Jones and JJK will be referred to collectively as "Jones/JJK."

entered into an "Oil and Gas Option Agreement" under which they agreed to sell all of their oil and gas interests in West Virginia and Pennsylvania to Jones/JJK for $800 per acre. Three days later, Jones/JJK recorded a memorandum of the option agreement in Greene County, Pennsylvania, where at least seventeen of the properties are located. At the time of this transaction, Mrs. Wang stated that she did not think she still owned the properties, but she could not specifically recall selling them. Jones/JJK advised Mrs. Wang that he had searched the records, and according to that search, she was still the record owner. The properties included in the sale to Jones/JJK are the same properties sold to petitioner in 1995.

Some of Mrs. Wang's properties were owned by Telluric Corporation and Rock Camp Oil Company, Inc. Jones/JJK determined from the West Virginia Secretary of State's Office that petitioner was the president of Telluric Corporation based on his 1995 transaction with the Wangs. Jones/JJK then telephoned petitioner on or about June 24, 2010, to discuss the corporation's oil and gas properties. Petitioner informed Jones that he had purchased the properties in 1995 from the Wangs. Jones/JJK then informed petitioner of the May 17, 2010, option between the Wangs and Jones/JJK. On June 25, 2010, Jones/JJK recorded a memorandum of his agreement with the Wangs in Monongalia County, West Virginia. On June 28, 2010, petitioner recorded his 1995 deeds from the Wangs in both Pennsylvania and West Virginia.

During the next two months, petitioner and Jones/JJK disputed the title to the properties. The dispute was in the form of exchanges of several e-mails and letters. Jones/JJK took the position that whatever claim petitioner had to the properties, it was subject to Jones/JJK's claim because petitioner failed to record his deeds. Jones/JJK offered to purchase seventeen of the approximately ninety parcels from petitioner at $800 per acre, the same price in Jones/JJK's option agreement with the Wangs. Jones/JJK advised that it would file suit to enforce its option should petitioner refuse the offer. According to petitioner, Jones/JJK threatened to cloud the title to the entirety of the properties deeded to petitioner in 1995 by the Wangs if petitioner did not agree to the deal. Petitioner initially refused as he believed Jones/JJK's offered price was well below the current market value for the mineral interests.

On August 5, 2010, Jones/JJK presented the Wangs with a quitclaim deed whereby the Wangs conveyed their right, title, and interest in any oil and gas properties and royalties in Pennsylvania and West Virginia to Jones/JJK.

Petitioner was represented by attorney J. Kevin Ellis during the dispute with Jones/JJK over the title to the properties. Eventually, on August 26, 2010, petitioner and Jones/JJK executed a "Settlement and Release Agreement" that contained, among other things, a mutual release of claims and a mutual covenant not to sue. Under the terms of this agreement, Jones/JJK obtained clear title to seventeen of the approximately ninety parcels included in the 1995 deeds from the Wangs for the price of $800 per acre, totaling $372,537. Petitioner obtained clear title to the remaining tracts for which he paid Jones/JJK nothing. Attorney Ellis, on petitioner's behalf, drafted and insisted on the inclusion of the release language in the "Settlement and Release Agreement." Jones/JJK subsequently sold the properties to Respondents Venable, LTD ("Venable"), and Venro, LTD ("Venro").

2

In November of 2010, petitioner filed suit against the Wangs in the Circuit Court of Monongalia County alleging breach of contract as a result of the Wangs' entering into the May 17, 2010, option agreement with Jones/JJK. The Wangs' depositions were originally scheduled for August 25, 2011, but were rescheduled at their request. The depositions were rescheduled at least two more times at the request of the Wangs before petitioner was able to depose them on January 17, 2012. According to petitioner, until the deposition of Mrs. Wang, Jones/JJK led him to believe that Mrs. Wang outright denied the 1995 conveyance to petitioner. During Mrs. Wang's deposition, however, she testified that she told Jones multiple times that she did not *think* she owned the properties anymore, but she was not sure. Mrs. Wang's deposition reveals that she had little to no recollection of the 1995 transaction with petitioner and that she had problems with memory in general.

On January 26, 2012, petitioner filed a motion to amend his complaint to add Jones, JJK, Venable and Venro as defendants, and the court granted the motion. Respondents filed their motions to dismiss on or about April 9, 2012. The circuit court granted the respondents' motions to dismiss by order dated August 7, 2012, on the basis that the claims were barred by the "Settlement and Release Agreement" and found that petitioner "has not alleged facts necessary to overcome the extremely high burden of proving the elements of economic duress." The court concluded that "bringing suit would have been one course to determine who had rightful ownership. Instead, the parties resolved the issue with a negotiated Agreement. Mr. Swiger cannot contend that he had no alternative but to acquiesce. Therefore, the Court does not need to address the merits of the causes of action." The circuit court also ruled that petitioner's claim was not filed until seventeen months after signing the "Settlement Agreement and Release," which further discredited his claim of duress.

As to Venable and Venro, the court granted their motion because petitioner's claims against them was derived solely from Jones/JJK's actions and there were no separate causes of action against these two defendants. Petitioner now appeals to this Court.

Petitioner raises three assignments of error, all related to his claim of economic duress.[3] First, he argues that Jones/JJK misled him so he would believe that Mrs. Wang unequivocally denied the 1995 conveyance, when in fact she testified that she could not remember it, and that Jones' obtaining a quitclaim deed evidenced his knowledge that someone else owned the land. Orders enforcing settlement agreements are reviewed under and abuse of discretion standard. *DeVane v. Kennedy,* 205 W.Va. 519, 519 S.E.2d 622 (1999).

"The concept of 'economic or business duress' may be generally stated as follows: Where the plaintiff is forced into a transaction as a result of . . . wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss." *Machinery Hauling, Inc. v. Steel of West Virginia,* 181 W.Va. 694, 697, 384 S.E.2d 139, 142 (1989)(citations omitted). The party claiming economic duress must satisfy two factors: "(1)

---

[3]Initially, we note that the "Settlement and Release Agreement" at issue clearly and unambiguously bars the petitioner's claims against respondents. The only method for petitioner's claims to survive is to void the agreement by a showing of duress.

the party who asserts business compulsion 'must show that he has been the victim of a wrongful or unlawful act or threat,' and (2) 'such act or threat must be one which deprives the victim of his unfettered will.'" *Id.* (quoting 13 *Williston on Contracts* § 1617 at 704 (1970)). Courts have evolved from referring to "free will" to using the standard of "no reasonable alternative." *Id.* (citing § *Restatement 2d of Contracts* (1981)).

Here, we cannot find that the circuit court abused its discretion in dismissing petitioner's claims of economic duress. Petitioner's failure to record the 1995 deeds enabled Jones/JJK's status as bona fide purchasers. "A bona fide purchaser of land is one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry." *Wolfe v. Alpizar,* 219 W.Va. 525, 529, 637 S.E.2d 623, 627 (2006). When Jones/JJK first approached Mrs. Wang, she was uncertain about whether she owned the property, so Jones/JJK undertook a records search. Of course, there were no records available due to petitioner's failure to record the deeds. Next, as for the quitclaim deed obtained by Jones, it provided no more leverage than what he already had. If petitioner held valid title to the properties, then the quitclaim deed would give Jones/JJK nothing. Finally, petitioner was represented during his dealings with Jones/JJK by Attorney Ellis, and it was Attorney Ellis who insisted, on behalf of petitioner, that the agreement include a mutual release of claims.

In his second assignment of error, petitioner argues that, contrary to the ruling of the circuit court, his claim of duress was sufficiently prompt. "A party seeking to repudiate a release must act promptly in disavowing it once the putative duress ends or else the party will be deemed to have ratified the agreement." *Berardi v. Meadowbrook Mall Co.,* 212 W.Va. 377, 384, 572 S.E.2d 900, 907 (2002)(citing *Freedlander, Inc. v. NCNB National Bank,* 706 F.Supp 1211, 1222 (E.D.Va. 1998)). Petitioner asserts that it was not until the deposition of Mrs. Wang that he learned that she told Jones that she did not think she owned the property when he approached her in 2010, and that petitioner sought to amend his complaint to include respondents only ten days later. However, the record reveals that petitioner should have been aware of Mrs. Wang's uncertainty in April of 2011 when she responded to his first set of discovery requests.

Finally, petitioner argues that he had no reasonable alternative but to acquiesce to the "Settlement Agreement and Release" and the sale of the seventeen parcels to Jones/JJK, or he would risk his interest in the entirety of the property deeded by the Wangs in 1995 if Jones filed suit. We have held that the threat of litigation, if based on a legal right, does not support a claim of duress. *Westover Realty Co. v. Estate of Wassick,* 206 W.Va. 207, 523 S.E.2d 267 (1999). Petitioner's failure to record the 1995 deeds gave Jones/JJK the legal right to pursue litigation to determine title. Moreover, petitioner admits that he signed the agreement with Jones/JJK to limit his exposure. This is the typical reason one settles a dispute, and under the facts of this case, does not support a claim of duress sufficient to overcome dismissal under Rule 12(b)(6).

For the foregoing reasons, we affirm.

Affirmed.

4

**ISSUED:**  May 17, 2013

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Brent D. Benjamin

**NOT PARTICIPATING:**

Justice Robin Jean Davis