483 S.E.2d 819

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Corporation, Plaintiff Below, Appellee,**

v.

**Katherine BENNETT, a minor, Temperance Bennett, a minor, S.D. Hardin, Trustee, McDowell County National Bank, Defendants Below, Appellees,**

and

**Michael Bennett, an Individual, Defendant Below, Appellant.**

No. 23425.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1997.

Decided Feb. 21, 1997.

Gloria M. Stephens, Welch, for Appellant.

Charles R. Webb, Giatras & Webb, Charleston, for Appellee.

DAVIS, Justice:

Michael Bennett, appellant/defendant below, has prosecuted this appeal from an order of summary judgment granted by the Circuit Court of Mercer County to the appellee/plaintiff below, Provident Life and Accident Insurance Company[1] hereinafter referred to as "Provident". The order of summary judgment awarded Provident its subrogation claim against Mr. Bennett in the amount of $32,847.86. On appeal Mr. Bennett contends that material issues of fact exist which precluded summary judgment. We agree.

## I.

### FACTUAL BACKGROUND

The facts of this case are centered on an automobile accident involving Mr. Bennett's family. On January 27, 1988, Mr. Bennett's wife, Tempe Bennett, was involved in a single car accident in McDowell County. The record indicates that Mrs. Bennett lost control of her car after coming upon a patch of ice, and traveled off the road and hit a tree. The Bennett's three children, Katherine, Temperance and Michael Junior, were in the car at the time of the accident. Although everyone in the car sustained injuries, only the injuries to Katherine and Temperance were serious.[2]

Mr. Bennett, at the time of the accident, had family health care coverage under an employee benefits plan sponsored by his employer, Consolidation Coal Company. The benefits plan was administered by Provident[3]. Mr. Bennett notified Provident of the accident and filed a claim for medical expenses and treatment incurred as a result of the accident. The record indicates that Provident eventually paid a total of $29,137.08 for all medical treatment and expenses.[4]

---

1. Three other defendants were involved in this case but did not appeal the judgment: Mr. Bennett's two minor children Katherine and Temperance Bennett, who were represented by counsel, and S.D. Hardin, a Trustee with McDowell County National Bank.

2. Katherine, who was three years old at the time of the accident, sustained injuries to the right side of her face, her right ear and right eye—she eventually lost all vision in her right eye. Temperance, who was six years old when the accident occurred, sustained a fractured tibia and fibula.

3. Subrogation and indemnity clauses existed in the employee benefits plan defendant had through his employer.

4. The bulk of this sum, $25,511.43, was paid for medical treatment received by Katherine and Temperance.

The record illustrates that on numerous occasions Provident representatives corresponded with either Mr. Bennett or his counsel as to the availability of a third party claim for injuries sustained by the Bennett children for purposes of seeking reimbursement. Provident was never informed by Appellant's counsel that a claim had been filed for injuries sustained by the Bennett daughters through the Bennett's automobile liability insurance carrier, State Farm. Finally, on or about March 16, 1989, an agent for Provident contacted Mr. Bennett and for the first time he advised Provident that a claim was pending against the Bennett's automobile liability carrier. Provident immediately, by letter dated March 21, 1989, notified Mr. Bennett's attorney and State Farm of its subrogation claim.

On April 3, 1989, a summary proceeding occurred wherein the claims on behalf of the Bennett daughters were settled against their father's automobile liability insurance company (State Farm). The settlement was for $87,000.00 [5]. Unaware that the summary proceeding was taking place, Provident did not appear. Provident asserts that on June 19, 1989, it first became aware that the automobile liability insurance carrier (State Farm) had settled a claim with the Bennetts and their attorney. Provident immediately notified State Farm again and requested subrogation. State Farm refused stating that it would not honor its subrogation claim because the Bennetts had released it of all liability.

On July 10, 1990, Provident filed the instant suit seeking recovery of all monies it paid out on behalf of Mr. Bennett's family.[6] Provident eventually moved for summary judgment. The circuit court, finding no material issues of fact in dispute, granted summary judgment to Provident by order entered December 2, 1994.[7] Appellant filed this appeal. Appellant presents four issues which he contends are disputed material facts which prevented the circuit court from granting summary judgment in this case: (1) Provident did not comply with the terms of its policy regarding subrogation, (2) Provident did not timely notify State Farm about the subrogation claim, (3) the subrogation amount claimed was incorrect, and (4) Katherine and Temperance were not made whole by the settlement.

## II.

### STANDARD OF REVIEW

■ We review a circuit court's entry of summary judgment de novo. Syl. pt. 1, *Jones v. Wesbanco*, 194 W.Va. 381, 460 S.E.2d 627 (1995); Syl. pt. 1, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995); Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We noted in *Asaad v. Res–Care, Inc.*, 197 W.Va. 684, 687, 478 S.E.2d 357, 360 (1996) that "[b]ecause appellate review of an entry of summary judgment is plenary, this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." It was articulated in syllabus point 1 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995) that " ' '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." We also clarified in syllabus point 5 of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995) that:

Roughly stated, a 'genuine issue' for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a

---

5. No claim was made against State Farm by Mr. Bennett's wife and son.

6. The suit was initially brought only against Mr. Bennett. Provident subsequently impleaded, as indispensable parties, Katherine, Temperance and Mr. Hardin. See note 1, supra.

7. The circuit court calculated the judgment award as follows. The request by Provident for $29,137.08 was reduced by 33⅓%, for attorney fees, leaving Provident with a sum of $19,424.72. The court then calculated interest at 10% from 1989 to 1994, and concluded the actual award to Provident was $32,847.86.

trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

We review the issues based upon the above principles of law.

## III.

### DISCUSSION

We note at the outset that the appellant does not dispute the validity of subrogation as a general matter. Indeed, this Court has recognized that the right of subrogation with regard to medical payments is valid and is not a violation of public policy. We held in the single syllabus of *Travelers Indemnity Co. v. Rader*, 152 W.Va. 699, 166 S.E.2d 157 (1969), that:

> A provision in an insurance policy providing for the subrogation of the insurer to the rights of the insured to the extent that medical payments are advanced to such insured by the insurer is distinct from an assignment of a tort claim and is not invalid as against the public policy of this State.

*See also* Syl. pt. 1, *Nationwide Mut. Ins. Co. v. Dairyland Ins. Co.*, 191 W.Va. 243, 445 S.E.2d 184 (1994); Syl. pt. 1, *Federal Kemper Ins. Co. v. Arnold*, 183 W.Va. 31, 393 S.E.2d 669 (1990).

8. Mr. Bennett asserts this argument in his brief by indicating Provident did not "reserve" its right to subrogation and is "barred" from doing so now. However, the facts used in defendant's argument invoke the doctrines of estoppel and waiver.

9. Provident's contractual subrogation provisions provide as follows:
   (e) Subrogation
   The Plan does not assume primary responsibility for covered medical expenses which another party is obligated to pay or which another insurance policy or other medical plan covers. Where there is a dispute between the carriers, the Plan shall, subject to provisions 1 and 2 immediately following, pay for such covered expenses but only as a convenience to the Beneficiary eligible for benefits under the Plan

### A.

### *Compliance With Subrogation Terms*

■ Mr. Bennett contends that Provident is estopped from asserting a subrogation claim and has waived its right to subrogation,[8] as a result of plaintiff's failure to comply with the terms of its subrogation provision and other communication it had with him.[9] We held in syllabus point 9 of *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986), in part, that "[t]he right of subrogation can either be modified or extinguished through express contractual language, or by an action of the surety which is inconsistent with the right of subrogation[.]" *See Runner v. Calvert Fire Ins. Co.*, 138 W.Va. 369, 76 S.E.2d 244 (1953) (where we applied the doctrines of waiver and estoppel against an insurer to nullify the insurer's subrogation claim against an insured). In the instant proceeding Mr. Bennett argues that Provident's subrogation provision was triggered only if defendant executed a subrogation agreement and the accident involved a third party. In addition to proffering the subrogation provision itself to support his contention, Mr. Bennett references this Court to communication between the parties. In a letter dated March 13, 1988, Provident informed counsel for Mr. Bennett that "[i]f this accident was caused by a third party, we will be requesting a subrogation statement be signed before we will be able to consider payment." Counsel for Mr. Bennett responded to the letter by writing Provident on

and only upon receipt of an appropriate indemnification or subrogation agreement; but the primary and ultimate responsibility for payment shall remain with the other party or carrier. Obligations to pay benefits upon behalf of any Beneficiary shall be conditioned:
   1. Upon such Beneficiary taking all steps necessary or desirable to recover the costs thereof from any third party who may be obligated therefore, and
   2. Upon such Beneficiary executing such documents as are reasonably required by the Plan Administrator, including, but not limited to, an assignment of rights to receive such third party payments, in order to protect and perfect the Plan's rights to reimbursement from any such third party.

May 19, 1988, and informing it that the accident did not involve another vehicle. Provident wrote back to counsel for Mr. Bennett on June 3, 1988 and conveyed the following:

> Thank you for your recent letter regarding the accident.... Please accept our apologies for the delay in replying, but when we reviewed the file for reconsideration, a discrepancy was noted in the information received about the accident. Our original information indicated a third party was involved. We have now received confirmation from Mr. Bennett that the accident was caused by ice on the road.
>
> We have now begun processing all previously rejected charges.

Based upon the above evidence Mr. Bennett argues that Provident is estopped from asserting its subrogation claim and has effectively waived the same. Mr. Bennett argues that, because Provident never tendered any documents for the him to sign and that the correspondence of Provident led him to believe that the facts of this case did not trigger the subrogation provision, Provident is not entitled to subrogation.

▪ Provident contends that it did not waive its right to subrogation, nor is it estopped from asserting the same based upon the above representations by Mr. Bennett. Provident asserts that on numerous occasions it inquired of Defendant's counsel as to any third party claims. Provident also argues that counsel for Mr. Bennett should have informed it that Mr. Bennett was asserting a claim against his automobile insurer. Provident alleges that it was not until March 16, 1989 that it learned from Mr. Bennett that he had a claim pending against State Farm. Provident produced two unsigned form letters dated March 21, 1989, allegedly sent to counsel for Mr. Bennett and State Farm, wherein it asserted its subrogation claim.[10] Additionally, Provident alleges that it did not know of the settlement proceeding until it received a June 19, 1989 letter from State Farm. The letter from State Farm informed Provident that State Farm would not honor its subrogation claim because Mr. Bennett had released it of all liability. If the settlement by the Bennetts and State Farm was made with the knowledge, actual or constructive, of Provident's subrogation rights, such settlement and release is a fraud on Provident and will not affect Provident's right to subrogation against Mr. Bennett or his insurance company. *See Nationwide Mut. Ins. Co. v. Dairyland Ins. Co.*, 191 W.Va. 243, 246, 445 S.E.2d 184, 187 (1994).

The circuit court's summary judgment order does not address Mr. Bennett's waiver and estoppel allegations. Nor does the order address Provident's contention that it asserted its subrogation claim before Mr. Bennett and State Farm formalized their settlement proceeding on April 3, 1989. Mr. Bennett's assertion of waiver and estoppel, and Provident's denial that a waiver occurred and that it is estopped from asserting subrogation, are disputed genuine issues of material facts. Both parties proffered evidence to support their positions. This Court cannot determine, as a matter of law, which evidence is valid. *See* Syl. pt. 1, *Runner* ("Where, under the facts and circumstances of a particular case, the court cannot, as a matter of law, hold that the specific provisions of an insurance contract have been breached, the question is one for jury determination.").

### B.

### *Was State Farm Notified Timely?*

▪ Mr. Bennett argues that Provident's subrogation rights directly against him are barred, if it notified State Farm of its subrogation claim prior to the settlement between Mr. Bennett and State Farm. In asserting this argument Mr. Bennett relies upon our decision in *Nationwide Mut. Ins. Co. v. Dairyland Ins. Co., supra*. *Nationwide* involved several certified questions relating to whether an insurance carrier that pays its insured's medical payments under its policy may, through the subrogation clause in its policy, recover them from the liability carrier of the tortfeasor. We held that an insurance carrier could seek subrogation from a liability carrier. Specifically, we set out in sylla-

---

**10.** Mr. Bennett challenges this evidence on the grounds that there is no evidence of when the letters were sent out, if they were sent out, and when they were received.

bus point 3 of *Nationwide,* that "[t]he subrogation rights of an insurance carrier are not barred so long as the tortfeasor's insurance carrier was notified of the subrogation claim *before it settled with the insured* who received the medical payments." (emphasis added.) Additionally, we held in syllabus point 4 of *Nationwide,* in part, that "[o]rdinarily the tortfeasor's insurance carrier is primarily responsible for payment of the subrogation claim."

Mr. Bennett argues that under *Nationwide* Provident must seek subrogation from State Farm if it made State Farm aware of the subrogation claim prior to the settlement. While it is true that *Nationwide* places the initial burden of payment of a subrogation claim on a liability carrier who has timely knowledge of the claim or should have known of the claim, we also indicated in *Nationwide* that "[t]here may be an occasion where the insured who is represented by counsel participated in some fraudulent scheme against the subrogation carrier that would require that general priority to be reversed." *Nationwide,* 191 W.Va. at 247, 445 S.E.2d at 188. Mr. Bennett argues that Provident's own evidence states that it notified State Farm of its subrogation claim prior to the settlement.

Provident asserts that Mr. Bennett had a duty to notify State Farm regarding subrogation. Provident relies on language from a footnote in *Nationwide* wherein we indicated "[n]otification can come from the insurance carrier claiming subrogation or from the insured who has received the payments which are subject to the subrogation claim." *Nationwide,* 191 W.Va. at 247 n. 5, 445 S.E.2d at 188 n. 5. Mr. Bennett counters by arguing that he was led to believe by Provident that this case did not involve subrogation. We are convinced by the arguments raised on appeal that disputed material issues of fact remain outstanding on the issue of notification to State Farm. For example, did Mr. Bennett have knowledge, prior to the settlement with State Farm, that Provident was seeking subrogation? If so, then under *Nationwide* Mr. Bennett should have informed State Farm of the subrogation claim. Did Provident in fact notify State Farm, prior to the settlement with Mr. Bennett, that it had

a subrogation claim against Mr. Bennett? If so, then under *Nationwide* State Farm is liable for the subrogation claim. A myriad of other fact issues flow from the application of *Nationwide,* all of which make summary judgment inappropriate in this case.

### C.

### *Was the Amount of the Award Correct?*

The circuit court calculated the amount actually awarded in this case based upon the total monies paid by Provident on behalf of all of Mr. Bennett's injured beneficiaries, i.e., $29,137.08. Mr. Bennett notes, however, that Provident's complaint alleged it was owed $25,511.43, the amount that was paid out on behalf of Temperance and Katherine. However, during summary judgment Provident sought to recover the full amount of monies paid. Mr. Bennett contends, and we agree, that fact issues existed regarding what amount was actually in litigation. Mr. Bennett contends that the settlement with State Farm was only between Temperance and Katherine. Therefore, the only amount that should be in litigation concerns payments made by Provident on behalf of Temperance and Katherine. Neither the summary judgment order nor Provident's brief addresses this issue. We believe that this issue creates a material factual dispute which was not in the purview of summary judgment disposition.

### D.

### *Were Temperance and Katherine Made Whole by the Settlement?*

Mr. Bennett contends that Provident was not entitled to recoup from the settlement received by Temperance and Katherine, because neither child was "made whole" by the settlement. Mr. Bennett rests his argument upon our decision in *Kittle v. Icard,* 185 W.Va. 126, 405 S.E.2d 456 (1991). The issue presented in *Kittle* was whether the appellant, West Virginia Department of Human Services, was entitled to be fully reimbursed for the medical expenses it paid on behalf of the appellees from the amount the appellees eventually received as a settlement from the legally liable party. We pointed out in sylla-

bus point 1 of *Kittle* that "'[t]he right of subrogation depends upon the facts and circumstances of each particular case.' *Huggins v. Fitzpatrick,* 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926).' Syllabus point 3, *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729 (1986)." We also quoted with approval the ruling by the Wisconsin Supreme Court in *Rimes v. State Farm Mut. Ins. Co.,* 106 Wis.2d 263, 316 N.W.2d 348, 353 (1982), wherein it was said that "'[o]ne who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the insured is made whole.'" *Kittle,* 185 W.Va. at 129, 405 S.E.2d at 459. We found that the infant child in *Kittle* was not made whole by the settlement in that case and upheld the lower court's ruling "that the settlement does not fully compensate the infant for his injuries and that further set-offs would reduce any money needed to be saved for the future medical expenses[.]" *Id.,* 185 W.Va. at 134, 405 S.E.2d at 464.

Mr. Bennett argues that the facts of this case show that Temperance and Katherine were not made whole by the settlement. Mr. Bennett notes that Katherine permanently lost the vision in her right eye, and that there will be future expenses for the care of this loss in vision. Both girls, argues Mr. Bennett, will require future scar revision, and that the injuries and damages caused to the girls exceed the amount recovered in the settlement. The circuit court's summary judgment order held that *Kittle's* made whole doctrine was not applicable in this case because (1) the defendant settled with State Farm for less than the policy limits, and (2) because the award itself would come from the interest earned on the investment of the money, the corpus of the original settlement would be left intact. Provident, in its brief, argues that *Kittle* is inapplicable to this case because it involved a statutory right of subrogation. We are not persuaded by the circuit court's ruling nor Provident's attempt to factually distinguish *Kittle.*[11]

■ The circuit court's finding that the *Kittle* made whole doctrine is inapplicable because Mr. Bennett settled with State Farm for less than the policy limits is clearly wrong. First, the made whole doctrine embodies a policy deemed socially desirable in this State, in so far as it fosters the adequate indemnification of innocent automobile victims. Second, if we approved of the yard stick used by the circuit court to remove application of the made whole doctrine, recovery of less than policy limits, this Court would be sanctioning a test that undermines the policy justification for the doctrine. This we cannot allow. Therefore, we hold that when applying the made whole doctrine it is incumbent on the circuit court to consider: 1) the ability of parties to prove liability; 2) the comparative fault of all parties involved in the accident; 3) the complexity of the legal and medical issues; 4) future medical expenses; 5) nature of injuries; and 6) the assets or lack of assets available above and beyond the insurance policy.

The factors identified above are not all inclusive. They merely provide some guidelines for the lower courts to utilize when determining whether a plaintiff has been made whole by the settlement proceeds. *See Alfa Mutual Insurance Co. v. Head,* 655 So.2d 975, 977 (Ala.1995) (instructing lower courts to consider "damage to property, medical expenses, pain and suffering, loss wages, and disability[.]") Quoting, *Powell v. Blue Cross and Blue Shield,* 581 So.2d 772, 778 (Ala.1990).

## IV.

## CONCLUSION

Based upon the foregoing we reverse the circuit court's order granting summary judgment and remand this case for trial on the merits.

Reversed and Remanded.

---

**11.** We do note that in *Kittle* we recognized the authority of the legislature to specifically exclude the application of normal subrogation principles pursuant to statute. In the context of the statute under consideration in *Kittle,* we "held that be-cause the legislature had not provided that normal subrogation principles should not be applied, the [C]ourt would apply those principles." *Kittle,* 185 W.Va. at 132, 405 S.E.2d at 462. (Citation omitted).