572 S.E.2d 900

**Jerry A. BERARDI, Betty J. Berardi, and Bentley Corporation, Plaintiffs Below, Appellants,**

v.

**MEADOWBROOK MALL COMPANY, an Ohio Limited Partnership, and the Cafaro Company, an Ohio Corporation, Defendants Below, Appellees.**

No. 30517.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Decided Nov. 1, 2002.

Brent E. Beveridge, Beveridge Law Offices, Fairmont, for the Appellants.

Kevin S. Kaufman, Kaufman & Bowen, Bridgeport, for the Appellees.

PER CURIAM:

Jerry A. Berardi (hereinafter referred to as "Mr. Berardi"), Betty J. Berardi, and Bentley Corporation, plaintiffs below/appellants (hereinafter collectively referred to as "the Berardis"), seek reversal of a summary judgment granted to Meadowbrook Mall Company, an Ohio Limited Partnership, and the Cafaro Company (hereinafter referred to as "Cafaro Company"), an Ohio Corporation, defendants below/appellees (hereinafter collectively referred to as "Meadowbrook" or where necessary "Cafaro Company"). After reviewing the briefs, considering pertinent authorities, and hearing the arguments of counsel, we affirm the circuit court.

## I.

### FACTS AND PROCEDURAL HISTORY

Between 1985 and 1987, the Berardis leased space for three restaurants from Meadowbrook.[1] In 1990, the Berardis were delinquent in their rent. Cafaro Company, an affiliate of Meadowbrook, sent a letter dated October 1, 1990, to Mr. Berardi citing the arrearages. The letter informed him that a lawsuit would be filed in Ohio requesting judgment for the total amount of the arrearages. The letter proposed that after filing the suits, a consent judgment would be forwarded to Mr. Berardi granting judgment for the full amount of arrearages. Once the

consent judgment was signed by both parties and filed with the court, the letter pledged, no steps to enforce the judgment would be undertaken providing the Berardis continued to operate their three restaurants consistent with the then present payment arrangement. Mr. Berardi signed the letter on October 5, 1990.

In April 1996, Meadowbrook caused to be filed in the Circuit Court of Harrison County, West Virginia, abstracts of judgment of the Ohio lawsuits. A motion to set aside the judgment was filed on behalf of the Berardis by their attorney, Mr. John Farmer after April 4, 1997, when a lien check disclosed the entry of judgments.[2] The lien check occurred as a result of the Berardis refinancing the "Goff Building"—a building they owned. The lien on the Goff Building impeded the refinancing.

Correspondence was exchanged between counsel for the parties starting on at least April 22, 1997. The correspondence ultimately led, in June 1997, to the Berardis and Anthony Cafaro (an authorized agent for Meadowbrook) signing a "Settlement Agreement and Release" settling the 1990 Ohio judgments. In this document, the Berardis acknowledged the validity of the 1990 Ohio judgments and that the aggregate due under them, plus interest and leasehold charges, was $814,375.97. The Berardis agreed to pay Meadowbrook $150,000 on the date the Goff Building refinancing occurred, and also to pay Meadowbrook $100,000 plus 8.5% interest per year on the third anniversary of the initial $150,000 payment. These payments would discharge the Berardis from all other amounts due and owing. The payment of the initial $150,000 would also result in

---

1. The material facts are undisputed or are taken in a light most favorable to the Berardis. *See, e.g., Provident Life and Accident Ins. Co. v. Bennett,* 199 W.Va. 236, 238, 483 S.E.2d 819, 821 (1997) (" '[B]ecause appellate review of an entry of summary judgment is plenary, this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' ") (quoting *Asaad v. Res–Care, Inc.,* 197 W.Va. 684, 687, 478 S.E.2d 357, 360 (1996))

2. In 1997, Attorney Farmer filed a motion to set aside judgment. Attached as an exhibit to the 1997 motion was a motion to dismiss the Ohio judgments. The 1997 motion stated that the circuit court's file did not contain the earlier motion or its accompanying proposed order. The 1997 motion stated that "[c]ounsel for the Defendants is at a loss to explain the absence of said motion and Order in the file of the Court, other than to state that said motion and Order must have been lost in the mail."

Meadowbrook releasing the lien against the Goff Building.

The agreement additionally recited:

Berardis hereby release and forever discharge Meadowbrook, its employees, agents, successors, and assigns from any and all claims, demands, damages, actions, and causes of action of any kind or nature that have arisen or may arise as a result of the leases, or Guaranties whether said claims are known or unknown, contingent, or liquidated, from the beginning of time to the effective date of the agreement. Berardis acknowledge there was no unethical behavior on behalf of Meadowbrook Mall Company, its employees, agents.

Nevertheless, on October 2, 2000, the Berardis filed a complaint against Meadowbrook alleging that Meadowbrook breached the October 1990 agreement by attempting to enforce the 1990 Ohio judgments, that Meadowbrook extorted by duress and coercion the 1997 agreement, and that Meadowbrook and other business entities had conspired to enter into extortionate agreements with their tenants. Meadowbrook filed a motion to dismiss under the 1997 settlement. The Berardis then filed an amended complaint alleging breach of contract of the 1990 agreement, fraud in obtaining the confessed 1990 Ohio judgments, that Meadowbrook extorted money from the Berardis under the 1997 agreement as they were attempting to secure a business loan, and conspiracy in committing extortion. Meadowbrook's answer included the affirmative defenses of, *inter alia,* accord and satisfaction, estoppel, laches and payment, release and waiver, and a counterclaim to enforce the 1997 agreement. Meadowbrook sought summary judgment, which the circuit court granted. From this summary judgment, Berardi now appeals.

## II.

### STANDARD OF REVIEW

"Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "

*Consolidation Coal Co. v. Boston Old Colony Ins. Co.,* 203 W.Va. 385, 390, 508 S.E.2d 102, 107 (1998). "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). However, "in making a ruling, 'the judge must view the evidence presented through the prism of the substantive evidentiary burden.' " *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 62, 459 S.E.2d 329, 339 (1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 215 (1986)). "In cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial." *Id.* at 59, 459 S.E.2d at 336. Our review here is further circumscribed because it involves a settlement agreement and we have said that, "when this Court undertakes the appellate review of a circuit court's order enforcing a settlement agreement, an abuse of discretion standard of review is employed." *DeVane v. Kennedy,* 205 W.Va. 519, 527, 519 S.E.2d 622, 630 (1999).

## III.

### DISCUSSION

The Berardis contend that because the 1997 agreement was coerced by economic duress, the circuit court erred in finding it was enforceable. They also assert that even if the 1997 agreement is valid, it does not impede their ability to sue Cafaro Corporation.

Meadowbrook retorts that the 1997 settlement agreement is valid and was not the result of economic duress in a legal sense. It contends the release was an arms-length transaction between sophisticated business people represented by counsel which is indisputably valid. Finally, they assert that the plain language of the agreement clearly includes Cafaro Corporation and that if the 1997 agreement is valid, it encompasses Cafaro as well as Meadowbrook.

The Berardis imply that summary judgment is inappropriate in complex cases or ones involving motive and intent. We reject characterizing this case as "complex." Further, economic duress must be viewed in terms of a plaintiff's reasonable response,

Syl. *Machinery Hauling, Inc. v. Steel of West Virginia*, 181 W.Va. 694, 384 S.E.2d 139 (1989) (defendant's wrongful activities cannot leave the plaintiff any "reasonable alternative but to acquiesce"), so that "[t]he defense of economic duress does not turn only upon the subjective state of mind of the plaintiffs, but it must be reasonable in light of the objective facts presented." *Freedlander, Inc. v. NCNB Nat'l. Bank*, 706 F.Supp. 1211, 1212 (E.D.Va.1988) (applying Virginia law), *aff'd*, 921 F.2d 272 (4th Cir.1990) (per curiam) (unpublished) (text available at 1990 WL 209860).[3]

"Summary judgment is not a remedy to be exercised at the circuit court's option; it must be granted when there is no genuine disputed issue of a material fact." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 698, 474 S.E.2d 872, 878 (1996); *Payne v. Weston*, 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995) (same). Thus, summary judgment is properly available. *See* 76 C.J.S. *Release* § 85 at 635–36 (1994) ("Where the evidence on an issue involving a release is undisputed or clearly warrants but one conclusion, the court may take the case from the jury and direct a verdict or finding on that issue.").

■■■ "We begin our discussion of this issue by reiterating, at the outset, that settlements are highly regarded and scrupulously enforced, so long as they are legally sound." *DeVane*, 205 W.Va. at 534, 519 S.E.2d at 637.[4] "The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of

some law or public policy.' Syllabus point 1, *Sanders v. Roselawn Memorial Gardens*, 152 W.Va. 91, 159 S.E.2d 784 (1968)." Syl. pt. 6, *DeVane*. Those who seek to avoid a settlement "face[ ] a heavy burden[,]" *Id.* at 534–35, 519 S.E.2d at 637–38 and "[s]ince ... settlement agreements, when properly executed, are legal and binding, this Court will not set aside such agreements on allegations of duress ... absent clear and convincing proof of such claims." Syl. pt. 2, in part, *Warner v. Warner*, 183 W.Va. 90, 394 S.E.2d 74 (1990).

■■■ The Berardis contend the 1997 settlement is invalid as it was procured by "economic duress:"

> The concept of "economic or business duress" may be generally stated as follows: Where the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss.

Syl., *Machinery Hauling, Inc. v. Steel of West Virginia*, 181 W.Va. 694, 384 S.E.2d 139 (1989). In *Machinery Hauling*, we emphasized that

> [t]here appears to be general acknowledgment that duress is not shown because one party to the contract has driven a hard bargain or that market or other conditions now make the contract more difficult to perform by one of the parties or that financial circumstances may have caused one party to make concessions.

---

3. In any event, under our modern approach, we have found that simply because a case implicates intent and motive does not render summary judgment perforce unavailable. *See Williams*, 194 W.Va. at 61, 459 S.E.2d at 338 (noting that while, "[c]ourts take special care when considering summary judgment in ... cases [where] state of mind, intent, and motives may be crucial elements[,i]t does not mean that summary judgment is never appropriate."). "Summary judgment 'does not become disfavored simply because a case is complex' or even if there are *some* disputed facts." *Plett v. United States*, 185 F.3d 216, 223 (4th Cir.1999) (citation omitted). "Summary judgment is both doctrinally and the-

oretically available in any type of case. Rule 56 is written in general terms and contains no restrictions on case-specific standards or restrictions regarding summary judgment." 11 *Moore's Federal Practice* § 56.31[1] (3d ed.2002) (footnote omitted).

4. Compromises, settlements and releases have different technical meanings, but their effects are generally identical; thus, we use the terms synonymously. *See* 15A Am.Jur.2d *Compromise and Settlement* § 3 at 729 (2000) ("A compromise or settlement often will have the same effects as a novation or release.").

181 W.Va. at 699, 384 S.E.2d at 139 (footnote omitted). "Duress is not readily accepted as an excuse" to avoid a contract. *E.g., Todd v. Blue Ridge Legal Servs., Inc.*, 175 F.Supp.2d 857, 863 (W.D.Va.2001) (quoting *Seward v. American Hardware Co.*, 161 Va. 610, 639, 171 S.E. 650, 662 (1933)). Thus, to establish economic duress, "[i]n addition to their own statements, the plaintiffs must produce objective evidence of their duress. The defense of economic duress does not turn only upon the subjective state of mind of the plaintiffs, but it must be reasonable in light of the objective facts presented." *Freedlander*, 706 F.Supp. at 1212.

 Mr. Berardi is a sophisticated businessman who has operated a number of commercial enterprises. As of 1997, the Berardis had substantial assets and a considerable net worth. While economic duress may reach large business entities as well as the "proverbial little old lady in tennis shoes," *Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W.Va. 803, 807 n. 2, 257 S.E.2d 878., 162 W.Va. 803, 257 S.E.2d 878, 881 n. 2 (1979), when the parties are sophisticated business entities, releases should be voided only in " 'extreme and extraordinary cases.' " *Davis & Assoc., Inc. v. Health Mgmt. Servs., Inc.*, 168 F.Supp.2d 109, 114 (S.D.N.Y.2001) (quoting *VKK Corp. v. N.F.L*, 244 F.3d 114, 123 (2d Cir.2001)). Indeed, "[w]here an experienced businessman takes sufficient time, seeks the advice of counsel and understands the content of what he is signing he cannot claim the execution of the release was a product of duress." *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo.Ct.App.1987) (citing *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir.1985)). While the presence of counsel will not *per se* defeat a claim of economic duress, "a court must determine if the attorneys had an opportunity for meaningful input under the circumstances." *Freedlander*, 706 F.Supp. at 1221.

 Here, the Berardis were represented by Attorneys John Farmer and Louis E. Enderle, Jr. in negotiations leading up to the June 1997 agreement. These negotiations apparently commenced at least as of April 22 and culminated in the June 1997 agreement.

It also appears Mr. Berardi communicated with Attorney Enderle during negotiations. In his deposition, Mr. Farmer disclaimed knowledge of any misrepresentations by the Meadowbrook Mall Company or the Cafaro Company or any of their agents in negotiating the 1997 settlement. Mr. Enderle stated in his deposition that he was unaware of any reason why the 1997 settlement agreement was unenforceable. The Berardis testified in their depositions they understood they would be bound by the terms of the agreement. We find persuasive the rationale of the Federal District Court in *Freedlander* when it granted summary judgment against a claim of economic duress:

> The presence of attorneys during five weeks of negotiations suggests that the plaintiffs were fully informed of their alternatives to settlement. Their presence also suggests that once the decision was made to go forward with the settlement, the attorneys informed the Freedlanders of their rights under the agreement. Hence, although the attorneys could not change the terms of the Settlement Agreement, the evidence suggests that they did act as a calming influence and allowed the plaintiffs to rationally assess different alternatives. *See also Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911–912 (3rd Cir.1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (which sets forth the principle that the opportunity to consult with counsel vitiates a duress defense, cites additional authority for this proposition, and distinguishes cases such as *Litten v. Jonathan Logan, Inc.*, 220 Pa.Super. 274, 286 A.2d 913 (1971) where the presence of lawyers was of no assistance to the plaintiffs under the circumstances).

706 F.Supp. at 1222 (initial internal citations omitted). *See also Adalian v. Stuyvesant Plaza Inc.*, 288 App.Div.2d 789, 790–91, 733 N.Y.S.2d 739, 741 (2001) ("Despite plaintiff's conclusory allegation that they were unfairly pressured to settle their action, we find no substantiation of this claim in the record, particularly in light of special counsel's uncontradicted account of the events leading up

to execution of the release.") [5]

At oral argument, the Berardis directed our attention to *Totem Marine Tug & Barge Co., Inc. v. Alyeska Pipeline Service Co.*, 584 P.2d 15 (Alaska 1978) in support of their claim.[6] In *Totem*, the Alaska Supreme Court reversed a grant of summary judgment finding that genuine issues of material fact existed concerning the validity of a release. *Totem* gives the Berardis no solace. The Alaska Supreme Court said in *Totem*, "[a]dmittedly, Totem's showing [in opposing summary judgement] was somewhat weak in that, for example, it did not produce the testimony of Roy Bell, the attorney who represented Totem in the negotiations leading to the settlement and release. At trial, it will probably be necessary for Totem to produce this evidence if it is to prevail on its claim of duress." 584 P.2d at 25. *Totem* is distinguishable because in the case *sub judice* we have the benefit of the deposition testimony of both Attorneys Farmer and Enderle— neither of whom testified to any wrongdoing by Meadowbrook.

Further, Mr. Berardi testified at his deposition that he never became aware of any new facts relative to the 1997 agreement that prompted him to sue Meadowbrook. The Berardis stated in their answers to Meadowbrook's requests for admission that there were no new facts which came to light after the 1997 agreement.

" '[N]o case can be found, we apprehend, where a party who, without force or intimi-

dation and with full knowledge of all the facts of the case, accepts on account of an unlitigated and controverted demand a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid his act on the ground that this is duress.' "

*Freedlander*, 706 F.Supp. at 1216–17 (quoting *Cary v. Harris*, 120 Va. 252, 257, 91 S.E. 166, 167 (1917)) (quoting *United States v. Child*, 79 U.S. (12 Wall.) 232, 244, 20 L.Ed. 360, 363 (1870)).[7]

Moreover, the Berardis did not file their complaint until October 2, 2000. A party seeking to repudiate a release must act promptly in disavowing it once the putative duress ends or else the party will be deemed to have ratified the agreement. *See Freedlander*, 706 F.Supp. at 1222 ("If the consideration passing at the time of the release is not returned, or the terms of the release are not challenged once the duress has passed, the release is ratified."). *See also International Halliwell Mines, Ltd. v. Continental Copper & Steel Indus., Inc.*, 544 F.2d 105, 108 (2d Cir.1976) (similar-New York law); *Schmalz*, 739 S.W.2d at 768 (similar). Courts have found that the failure to repudiate within four months, seven months, eighteen months and three-and-one-half years resulted in ratification of agreements. *See Dorn v. Astra USA*, 975 F.Supp. 388, 394 (D.Mass.1997) (collecting cases). Even if the Berardis' behavior was not a ratification, their dilatori-

---

5. During discovery the Berardis expressed dissatisfaction with Attorneys Farmer and Enderle. The actions or inactions of these counsel cannot be imputed to Meadowbrook. *Cf. Andes v. Albano*, 853 S.W.2d 936, 942–43 (Mo.1993) ("However, any allegation that her own counsel pressured her to sign the release simply cannot be attributed to opposing counsel."); *Link v. Wabash R.R.*, 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390 n. 10, 8 L.Ed.2d 734, 740 n. 10 (1962) (recognizing that protecting a plaintiff from the ramifications of their counsel's actions or inactions "would be visiting the sins of plaintiff's lawyer upon the *defendant*.") There exist other avenues to address claims of attorney dissatisfaction. *See Link*, 370 U.S. at 634 n. 10, 82 S.Ct. at 1386 n. 10, 8 L.Ed.2d at 740 n. 10 ("And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.")

6. In footnote 11 of *Machinery Hauling*, we said that our recognition that hard bargaining or financial or market conditions do not show economic duress should not be taken as an implication that *Totem* was incorrectly decided. 181 W.Va. at 699 n. 11, 384 S.E.2d at 144 n. 11. Our footnote did not address the consultation of counsel aspect of economic duress.

7. In explaining his change of heart concerning the 1997 agreement, Mr. Berardi said in his deposition that he concluded the agreement was extortionate, "[a]fter reviewing all of this in my head for months and months and months, and seeking the advice of other counsel, other attorneys, and in seeking the advice of present counsel."

ness "does further discredit their claim that their free will was broken at the time they entered into the settlement agreement[,]" *Freedlander,* 706 F.Supp. at 1222, and adds to the heavy burden they already carry in disavowing it. *See VKK Corp. v. NFL,* 244 F.3d 114, 123 (2d Cir.2001) (citation omitted) (applying New York law and finding "[t]he burden on a party seeking to avoid contractual obligations on the ground of economic duress 'increases proportionately with the delay in initiating suit or otherwise repudiating the contract in question . . . .' ")

Finally, we do not believe that any relative economic inequality between the Berardis and Meadowbrook sufficiently factor into the summary judgment calculation. We have recognized that, " '[i]n most commercial transactions it may be assumed that there is some inequality of bargaining power . . . .' " *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 604, 346 S.E.2d 749, 754 (1986) (quoting *Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 474, 223 S.E.2d 433, 440 (1976)). Indeed, even when one sophisticated business entity enjoys "a decided economic advantage" over another such entity, economic duress is extremely circumscribed:

> "Because an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective."

*Davis & Assoc.,* 168 F.Supp.2d at 114 (quoting *VKK Corp.,* 244 F.3d at 123).

Given the facts, the law's disfavor of economic duress, its approbation of settlements, the sophisticated nature of the parties, and the extremely high evidentiary burden the Berardis must overcome, we harbor no substantial doubt nor do we believe the circuit court abused its discretion.

The Berardis contend that even if the release is valid, it does not encompass Cafaro Company. "The general rule is that

a compromise or settlement agreement is favored by law and is to be construed as any other contract." *Floyd v. Watson,* 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962). The 1997 agreement specifically provides:

> Berardis hereby release and forever discharge Meadowbrook, its employees, agents, successors, and assigns from any and all claims, demands, damages, actions, and causes of action of any kind or nature that have arisen or may arise as a result of the leases, or Guaranties whether said claims are known or unknown, contingent, or liquidated, from the beginning of time to the effective date of the agreement. Berardis acknowledge there was no unethical behavior on behalf of Meadowbrook Mall Company, its employees, agents.

In his deposition, Mr. Berardi admitted that all of his claims in this case arose prior to the 1997 agreement. In the 1997 agreement, the Cafaro Company is included as "[t]he Cafaro Company DBA Meadowbrook Mall Company." The 1997 agreement is plain and encompasses the Cafaro Company. Therefore, the circuit court properly granted summary judgment in this case.

## IV.

## CONCLUSION

The judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.

Justice McGRAW dissents.