## MOATS *v.* RYMER.

Decided November 19, 1881.

1. An attorney, who is examined as a witness for his client, may be properly asked what his fee is; to show his interest in the suit and to go to his credibility.

2. If on being asked such question he declines to answer and states, that his agreement with his client is in writing, the court may either compel him to answer or award a writ of *subpœna duces tecum*, requiring him to produce it.

3. Whether such *subpœna* was improvidently awarded, is defective on its face or calls for a private paper are not questions which can affect the *client*, the only question as to him is, whether it is proper evidence however procured.

4. M makes a contract with his attorney to pay him fifty dollars retainer and in addition thereto one half of the amount recovered, the attorney not to be liable for any costs. This agreement may be properly read to the jury, to show the interest of the witness in the suit and to go to his credibility as a witness.

5. Such a paper does not come under the rule of professional communications or confidence.

6. *Quære:* If an attorney is put upon the stand as a witness for his client, is the professional privilege waived, and may he be required to disclose all he knows as to the case on trial?

7. As to the instructions proper to be given and refused in a case of malicious prosecution, *vide Vinal* v. *Core et al.*, 18 W. Va. 1.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Ritchie, rendered on the 26th day of February, 1881, in an action in said court then pending, wherein Henry Moats was plaintiff, and William M. Rymer was defendant, allowed upon the petition of said Moats.

Thomas J. Stealey, Esq., judge of the fourth judicial circuit, rendered the judgment complained of.

The facts of the case are sufficiently stated in the opinion of the Court.

*R. S. Blair* for plaintiff in error cited the following authorities: 1 Greenl. 321; 4 Wait Actions and Defences 343; *Id.* 339; *Id.* 353; *Id.* 355; 29 Gratt. 207; 12 Am. Dec. 267; 1 Whart. Law of Ev. §§ 576, 579, 580, 581; 1 Greenl. Ev. 320; Acts 1872–3 p. 202; 1 Am. Lead. Cas. 265, 267, 273; 29 Gratt. 207.

*C. J. Stuart* for defendant in error cited the following authorities: 1 Stark. Ev. (6th Am. Ed.) 18; Acts 1872–3 ch. 81 § 26; Ram on Facts 394.

PATTON, JUDGE, announced the opinion of the Court:

Henry Moats brought an action of trespass on the case for malicious prosecution in the circuit court of Ritchie county claiming $10,000.00 damages against William M. Rymer. The case was tried by a jury and a verdict found for the defendant, upon which judgment was entered, for him. From this judgment the plaintiff obtained a writ of error and *supersedeas* to this Court.

Two bills of exceptions were taken during the trial. The first bill shows, that one of the counsel of the plaintiff was introduced as a witness in his behalf, and on cross-examination was asked, how much fee he was to receive from the plaintiff, to which he replied, " that he did not regard it as any of their business, that his contract with the plaintiff was in writing, that he would not give it up or detail its contents." Whereupon the defendant moved the court for a *subpœna duces tecum*, to be served on said witness returnable forthwith. In response to this writ the witness appeared and moved the court to quash the writ upon the ground that it was improperly awarded, because it was defective on its face, and because it called for the production of a private paper, in which the defendant had no interest. This motion being overruled the witness produced the contract, which was read to the jury for the purpose of showing the witness's interest in the suit, and to go to his credibility as witness. To the reading of this paper to the jury the plaintiff objected, but the court overruled his objection and permitted it to be read. The contract showed, that the witness as counsel in the case was to receive $50.00 retainer, to be paid in twelve months, and in addition thereto one half of the recovery in the case, but was not to be liable for any costs.

Whether the *subpœna duces tecum* was properly awarded, or was defective on its face, or was to cause the production of a private paper are questions, that need not be considered in this court, where the only question is, whether the contract was proper evidence between the plaintiff and defendant upon the issues joined between them. If it was, it is no matter how that evidence was procured. It may be remarked however, that where any written document material to either party is in possession of a third party, the court may award a *subpœna duces tecum* to compel such third person to attend at the

trial of the cause and bring the document with him. This writ is of compulsory obligation and effect. In every instance it is a question for the consideration of the court, whether upon the principles of reason and equity the production of the paper should be required; and if it be withheld, whether the witness should be punished by attachment. *Amey* v. *Long*, 9 East 473; *Amey* v. *Long*, 1 Camp. 14. The only question is, whether it was competent to ascertain the interest, that this witness had in the result of the suit, and whether that interest could be shown in the way it was.

The counsel for the plaintiff in error argues, that this contract as to the fee comes under the rule of professional communications and confidence, which cannot be disclosed to the prejudice of the client's case. I do not so understand it; nor can it in any way affect the client's right to recover. What compensation he may choose to pay his attorney, does not enter into the question at all. It would be incompetent testimony, so far as it affected or was intended to affect the client, and as original evidence would clearly have been inadmissible. But I know no rule of law, when an attorney goes upon the stand as a witness, which exempts him from the rules applicable to all other witnessess, for testing the interest, which he has in the suit. Formerly one who had a pecuniary interest in the result of a suit was incompetent to testify at all; now by statute he may do so, and that interest goes to his credibility as a witness. To say in the case of an attorney, that the rule shall not apply, would be to make a distinction, that would be productive of no good and would be be founded upon no reason whatever. When he steps down from his place as attorney to take the stand as a witness, he must stand the test, which is applied to all other witnesses; and his credibility is to be weighed in the same scales of interest, in which that of all others is weighed.

Fortunately the books show very few cases, in which lawyers have become witnesses for their clients. While there are some cases of an extreme character, in which such practice is necessary, ordinarily it is much to be regretted, that such a practice should exist or be encouraged. So reprehensible is the practice generally, that it has been much doubted, whether a lawyer is a competent witness for his client. Wharton's

Law of Evidence, section 420. By the Roman law no attorney is permitted to testify as to a matter, in which he is professionally employed. *Id.* § 421, note. In 1 Greenl. on Evidence, (13th ed.) § 364, it is said : "In regard to attorneys it has in England been held a very objectionable proceeding on the part of an attorney to give evidence, when acting as advocate in the cause, and a sufficient ground for a new trial. But in the United States no case has been found to proceed to that extent, and the fact is hardly ever known to occur." But if a lawyer becomes a witness for his client, it is by no means clear, that the professional privilege is not waived. Wharton's Law of Evidence, section 583. In that section it is said : "Where however a party offers himself as a witness, it has been argued, that he may be asked as to his communications to his counsel, if part of the case he undertakes to prove." *Vide* §§ 479, 584 and note. If this be so, when the attorney is introduced by the client should not the same rule apply ?

As to whether the interest of the witness was shown in a proper manner, it is laid down by the authorities, that there are two modes of showing this interest ; but whether each is exclusive of the other, is not clearly settled. It may be shown by the examination of the witness or by evidence *aliunde.* If the evidence offered *aliunde* to show the interest is held to be inadmisible, the witness may be examined on his *voir dire ;* and if the witness on his *voir dire* does not answer in such a way as to show his interest, but leaves it doubtful, whether he is interested or not, evidence *aliunde* may be resorted to. (1 Greenl. Ev. § 423.) It is a matter of discretion in the court at *nisi prius,* whether to require the production of a paper by *subpœna duces tecum. (Amey* v. *Long,* 9 East 473 ; *Amey* v. *Long,* 1 Camp. 14.) In this case the exercise of this discretion could have been avoided by the answer to the question, What interest he had in the suit ? which the defendant had an unquestionable right to ask. He might doubtless have been compelled to answer that question, but as he stated, that that interest was embodied in a written contract, it seems to me to be clear, that the production of that paper was proper. But whether it was or not the *plaintiff* can not complain of the mode of producing it. I do not think the court erred in requiring the production of this paper and permitting it to be read to the jury, so far as the plaintiff is concerned.

The second bill of exceptions is as to three instructions asked for by the plaintiff and refused by the court. Without setting out the instructions in full it is sufficient to say, that in each one of them after setting forth certain facts, which the jury might have considered established by the evidence, the court was asked to instruct the jury, that from these facts they might infer malice. In the first instruction the language is as follows: "It is within itself a circumstance tending to prove malice upon the part of the defendant." In the second it is as follows: "It was his duty to have abandoned the prosecutions, and the further prosecution of the plaintiff was malicious and without probable cause." In the third, this language is used: "and therefore it was in itself a circumstance, which the jury can take into consideration showing want of probable cause, and from which malice may be inferred." These instructions were properly refused by the court. In the case of *Vinal* v. *Core et al., supra*, it was held by the court: 1. "Whether malice exists or not is a pure question of fact for the jury and should not be passed upon by the court, except to define to the jury clearly what is meant by malice. Whether particular facts admitted, undisputed or assumed do or do not constitute malice or are such as malice may be inferred from, is a mere question of fact for the jury; the court can draw no inference from any state of facts, that malice does or does not exist. 2. On the other hand probable cause is a mixed question of law and fact. What are the existing facts on which probable cause or its absence is based is a question of fact to be decided by the jury. But the facts being admitted, undisputed or assumed, whether they constitute probable cause or not, or whether from them the existence or absence of probable cause is to be inferred, is a pure question of law for the decision of the court and not for the jury." In the elaborate opinion of the Court in that case instructions such as were asked for in this case were fully discussed and considered; and I deem it only necessary to refer to that case to show fully the reasons, why the instructions here were properly refused by the court below.

I am of opinion to affirm the judgment of the circuit court with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.