523 S.E.2d 267

**WESTOVER REALTY COMPANY, INC., Plaintiff Below, Appellant,**

v.

**ESTATE OF John WASSICK, Jr., and John Wassick, III, Defendants Below, Appellees.**

**No. 25899.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1999.

Decided Nov. 5, 1999.

---

Paul R. Cranston, Cranston, Edwards & Rollo, PLLC, Morgantown, West Virginia, Attorney for Appellant.

Andrew G. Fusco, Jeffrey A. Ray, The Fusco Legal Group, L.C., Morgantown, West Virginia, Attorneys for Appellees.

PER CURIAM:

Appellant Westover Realty Company ("Westover") appeals from adverse rulings entered by the Circuit Court of Monongalia County on July 15, 1998, in a case which centers on the validity of a $435,000 promissory note.[1] Finding the promissory note to be valid and not the subject of economic duress, the jury entered its verdict in favor of Appellees John Wassick III ("Appellee Wassick") and the estate of John Wassick, Jr. Westover challenges the trial court's denial of its motions, both pre- and post-trial, concerning the effect of a disputed release on the promissory note in issue and also the trial court's quashing of a subpoena duces tecum. Upon a full review of these issues, we find no error and accordingly, affirm the lower court's rulings.

I. Factual and Procedural Background

Westover, through its president Arthur P. Scotchel, executed a promissory note (hereinafter referred to as "first note") for the amount of $100,000 to John Wassick, Jr., on March 1, 1990.[2] The note was secured by a deed of trust that was properly recorded in the office of the Clerk of the County Commission of Monongalia County. In November of 1990, Westover executed a second promissory note for the amount of $130,000 to John Wassick, Jr. The terms of this note were the same as the first note and the note was similarly secured by a properly recorded deed of trust. On January 3, 1991, Westover executed a third promissory note in the amount of $130,000 to John Wassick, Jr.[3] On August 18, 1992, Westover executed a fourth promissory note for the amount of $75,000 to John Wassick, Jr.[4]

John Wassick, Jr., assigned his interest in the four promissory notes and corresponding deeds of trust securing those notes to his son, John Wassick III, on February 28, 1994. This assignment was prompted by the fact that John Wassick, Jr., was diagnosed in 1994 with Alzheimer's disease.[5] On May 1, 1995, Westover entered into a promissory note (hereinafter referred to as "consolidated note") with John Wassick III for the amount of $435,000 at the annual rate of 14% interest. On the face of this consolidated note is language which states that Westover had defaulted on the four notes previously guaranteed to John Wassick, Jr.; that the four notes had been assigned to John Wassick III; that John Wassick III had agreed to forego foreclosure with respect to the respective deeds of trust securing those four notes; and that this new note represented a consolidation of the four previously-executed notes. The consolidated note provided for monthly payments of $5,075; set forth a pay off date of May 1, 1997; and expressly anticipated a principal payment in the amount of $100,000 that would reduce monthly payments to $3908.33. On May 17, 1995, Westover made a $100,000 payment on the consolidated note.[6] Following receipt of this payment, John Wassick III provided Westover with a release for the property which had been pledged as security for the first note.

On February 27, 1996, Westover filed suit in circuit court against the estate of John Wassick, Jr., and John Wassick III, seeking to have the consolidated note declared void and unenforceable. Westover alleged that it executed the consolidated note under duress as a result of John Wassick III threatening to foreclose on property that was pledged as security for the four promissory notes that it

---

1. In its order, the trial court denied Westover's motion to set aside the verdict, motion for judgment notwithstanding the verdict, and motion requesting a new trial.

2. The terms of this note provided for 8% interest and pay off was permitted at any time.

3. Like the first two notes, this note provided for 8% interest and was similarly secured by a properly recorded deed of trust.

4. This note provided for 7% interest and was secured by a properly recorded deed of trust.

5. At trial, Appellee John Wassick III introduced a letter from the Director of Neuropsychiatry at West Virginia University, dated April 22, 1996, stating that John Wassick, Jr., had been first diagnosed with Alzheimer's two years previously and that there was no question that John Wassick, Jr., could not currently "manage or otherwise account for his own affairs."

6. This payment resulted in the anticipated reduction of monthly payments on the consolidated note.

had guaranteed to John Wassick, Jr. In addition, Westover argued that the necessary consideration for the consolidated note was lacking given that John Wassick, Jr., had signed a release on December 6, 1993, relative to the first note and the property securing that $100,000 debt.[7]

The validity of the December 1993 release was disputed based on the circumstances of its execution. At trial, Appellee Wassick called into question whether the release was actually signed on the date it indicates, since the notary public who dated and verified the release was an employee of Westover. Appellee Wassick suggested that Westover may have wrongfully induced John Wassick, Jr., to sign the release, given that John Wassick, Jr., was not in full control of his mental faculties due to his Alzheimer's diagnosis in the Spring of 1994.[8] Additional evidence that Appellee Wassick introduced at trial to refute the validity of the December 1993 release was the fact that Westover did not attempt to have the release recorded [9] until more than seven months after its stated date of execution, and then, only after Westover had received notice that Appellee Wassick intended to sell the real property that was pledged as security for the notes.

Following a two-day jury trial, a verdict was entered in favor of John Wassick III and his father's estate. The jury concluded that the consolidated note had not been entered into as a result of economic duress and further, that the consolidated note was fully enforceable. In addition, the jury found that Westover "waived its right to collect any rent from Defendants [the Wassicks] by executing the May 1, 1995, consolidated note." Westover appeals from the trial judge's failure to

grant it a directed verdict based on the existence of the December 1993 release and subsequent failure to grant it post-trial relief on this same basis. Secondarily, Westover seeks a ruling from this Court finding that the lower court abused its discretion in quashing Westover's subpoena duces tecum.[10]

## II. Standard of Review

 Asserting that the trial court erred in refusing to recognize the validity of the December 1993 release, Westover appeals from the trial court's failure to grant a directed verdict, failure to grant its motions for judgment notwithstanding the verdict, and failure to award a new trial. We stated in syllabus point one of *Alkire v. First National Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996), that:

> In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

This Court's review of motions for judgment notwithstanding the verdict is de novo, as we

---

**7.** According to Westover, the consideration in exchange for the release of the $100,000 debt represented by the first note was its forgiveness of rental amounts owed to it by the Wassicks for storage of entertainment equipment on property owned by Westover. This contention, however, is seemingly contravened by the fact that Westover sent John Wassick III a bill for rent in the amount of $77,681 on September 1, 1995. This bill indicated that it related back to 1985 when the Wassicks' equipment was first stored on Westover's property.

**8.** At trial, Appellee Wassick introduced evidence that Mr. Scotchel, just before the filing of this lawsuit, tape-recorded a conversation between

himself and John Wassick, Jr., wherein Mr. Scotchel attempted to get John Wassick, Jr., who was suffering from the very late stages of Alzheimer's disease, to make statements against Mr. Wassick's interest.

**9.** The release was stamped by the clerk of the county commission as "Not Released. Releasor Differs."

**10.** Through this subpoena, Westover sought access to comprehensive billing documents and fee arrangements between the Wassicks and their counsel.

recognized in *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995). *Id.* at 482, 457 S.E.2d at 159. Our review of motions for directed verdict are governed by essentially the same principles implicated by appellate review of judgment notwithstanding the verdict. *See Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996). We review a trial court's failure to grant a new trial under an abuse of discretion standard. *See Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

With regard to the evidentiary rulings that are raised in this appeal, it is axiomatic that such rulings are governed by an abuse of discretion standard. *See Gentry v. Mangum,* 195 W.Va. 512, 518, 466 S.E.2d 171, 177 (1995). Thus, we review Westover's contention that the lower court erred in failing to take judicial notice of certain evidence and in deciding to quash Westover's subpoena duces tecum by determining whether such rulings were an abuse of the circuit court's "substantial discretion." *Id.* at 521, 466 S.E.2d at 180.

### III. Discussion

### A. December 1993 Release

■ Westover contends that because the December 1993 release complied with the statutory requirements concerning the proper form for a release, the trial court should have declared the release to be valid as a matter of law. *See* W. Va.Code § 38–12–4 (1997). Westover further maintains that the trial court should have taken judicial notice of the release's validity. According to Westover, the jury's verdict would necessarily have been in its favor had the jury been apprised as to the validity of the December 1993 release.[11] Westover states additionally that Appellee Wassick failed to introduce any

evidence at trial to show that the December 1993 release was not valid.

Responding to Westover's argument that the release is valid based on its proper form, Appellee Wassick asserts that the trial court was correct in concluding that the release is not "absolute proof" of payment of the debt associated with the first note, nor is it proof of entitlement to an offset.[12] As the trial court observed, during the June 18, 1998, hearing on Westover's post-trial motions,

[A] release of a deed of trust does not necessarily mean that the underlying debt is paid. . . . For whatever reason a person can decide to release the security on a note and it doesn't mean the note is paid. That's why I said this before at a couple [of] hearings. You can go to a bank and get a note paid in full and get it handed to you by the bank so there is no question about it.

Moreover, the trial court noted the December 1993 release did not contain language typically inserted in documents intended to release a debt which indicates that the release is "being granted in consideration of the payment in full of the debt." As further evidence of his position that the December 1993 release is a document of dubious origin and consequence, Appellee Wassick argued that Westover did not receive the first note with a designation that it was paid in part or in full in connection with the December 1993 release.[13]

Directly refuting Westover's contention that Appellees failed to introduce evidence at trial disputing the validity of the December 1993 release, Appellee Wassick identified numerous factual discrepancies that were brought to the jury's attention with regard to this document. The jury was apprised that the date written on the release is in the handwriting of the notary public—a Westover employee—rather than in the handwrit-

11. Upon being advised that the December 1993 release was valid, Westover contends that the jury would have had to rule in its favor because the release's validity compels the conclusion that John Wassick III had no legal right to threaten foreclosure on property that was covered by the December 1993 release.

12. Westover maintained that it was entitled to an offset against the principal amount due under the

consolidated note based on its storage of the Wassick's entertainment equipment. *See supra* note 7.

13. Only when Westover made the $100,000 payment on May 17, 1995, did Appellee Wassick prepare a release that indicated that the security pledged for the first note was hereby released in exchange for payment of the debt.

**212**

ing of John Wassick, Jr. Appellee Wassick also informed the jury that Westover never attempted to record the release until more than seven months after its execution. Significantly, the jury learned that the release was stamped by the clerk of the county commission as "Not Released. Releasor Differs." The jury heard evidence that Westover's attempted recordation of the release occurred immediately after notices of intent to sell were sent to the respective trustees for the property pledged as security for the original four promissory notes.[14] Additional information presented to the jury included the fact that Westover first informed Appellee Wassick of the existence of the December 1993 release in September 1995—fourteen months after the document had been executed. The jury heard evidence that the consolidated note expressly referred to the debt represented by the first note as a current debt. Perhaps the most significant evidence on this point however, was the fact that Westover continued to make interest payments on the first note from December 1993 until May 1995 when the consolidated note was executed.[15]

■ Having reviewed the evidence presented to the jury on the issue of the December 1993 release, we conclude that the evidence clearly permitted the jury to reach the decision it made. The record is replete with facts that call into question the validity of the release. Moreover, Westover's own actions, in continuing to make interest payments on the first note up to the point in time when the consolidated note was signed, combined with its dilatory conduct in attempting to record the release or bringing the document's existence to the attention of Appellee Wassick, certainly permitted the jury to conclude that the December 1993 release was not dispositive with regard to the issue of whether the consolidated note was enforceable. After hearing all the evidence, the jury determined that Westover entered into the consolidated note voluntarily without duress.

Threatening to do something that you have a legal right to do—foreclosure—does not amount to duress. *See* 6B Michie's Jurisprudence *Duress* § 3 (1998) (stating that "authorities are in accord that the threatened act must be wrongful to constitute duress" and that "a threat to do what one has the legal right to do, such as to foreclose ..., is not such duress as to justify rescission of a transaction induced thereby"). Furthermore, the trial court correctly concluded that the release was not determinative on the issue of whether the first note had actually been paid.

■ Concerning the issue of the trial court's refusal to take judicial notice of the December 1993 release, Appellee Wassick argues that Westover never properly presented the issue of judicial notice to the lower court. The only reference to judicial notice of the release was made by Westover's counsel during an objection raised while Appellee Wassick was cross-examining Mr. Scotchel. The trial court indicated that it would not consider a request for judicial notice during the objection and Westover's counsel never renewed its judicial notice request. We agree with Appellee Wassick that the issue of judicial notice was never properly brought to the lower court's attention and, as a result, no actual ruling was made on this issue. Consequently, Westover waived its right to appeal this issue by not properly preserving the issue below. *See* Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) (holding that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance"); *accord Whitlow v. Board of Educ.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (stating that failure to raise nonjurisdictional issues below precludes appellate consideration of such issues).

### B. Subpoena Duces Tecum

■ Westover raises as error the lower court's quashing of its subpoena duces tecum

---

14. Appellee Wassick indicates that the December 1993 release was first brought to his attention just ten days after notice was sent to the trustees of the subject deeds of trust advising them to sell the encumbered property.

15. The jury could certainly have determined, by simply applying rudimentary principles of logic, that no business person would continue to make payments on a note which he/she contends had already been paid off.

that was served on counsel for Appellee Wassick. The subpoena requested documents concerning fees paid by the Wassicks to their counsel over a twenty-year period. In addition, the subpoena sought particularized information concerning the fee and expense arrangement relative to the instant matter. Westover argues that the circuit court's ruling on the subpoena duces tecum had the effect of denying it the right to fully cross-examine Attorney Jeffrey Ray—the only witness offered by Appellee Wassick. Westover contends that it was prejudiced by being denied access to the requested billing records since it could not properly show the jury the true bias, interest, and motive of Mr. Ray. Citing the decision of *Moats v. Rymer*, 18 W.Va. 642 (1881), Westover argues that an attorney may not unilaterally refuse to answer questions on the witness stand concerning the fee arrangement he has with a client.

Appellee Wassick correctly observes that the circuit court's quashing of the subpoena did not limit in any fashion Westover's ability to inquire of Mr. Ray on cross-examination concerning matters of bias, interest, or motive. While Westover's counsel had free reign to pose a litany of inquiries to Attorney Ray on the subject matter of billing and fee arrangements, he opted not to pose even one question to Mr. Ray concerning this area.[16] By failing to inquire into this issue at trial, Westover has waived its right to assert error with regard to this issue.[17] *See generally* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § ·1–7(B)(6)(e) (3rd ed.1994) (discussing invited error doctrine); *State v. Bosley*, 159 W.Va. 67, 218 S.E.2d 894 (1975) (holding that judgment will not be reversed for any error in the record introduced by or invited by party asking for reversal).

Based upon the foregoing, the decision of the Circuit Court of Monongalia County is hereby affirmed.

Affirmed.

Chief Justice STARCHER, deeming himself disqualified, did not participate in the decision in this case.

Judge FRED RISOVICH II and Judge HERMAN G. CANADY, Jr., sitting by temporary assignment.

Justice SCOTT did not participate.

---

**16.** Appellee Wassick discloses a fact which Westover did not relate to this Court with the filing of its petition for appeal. Westover had deposed Attorney Ray prior to trial and learned that the fee arrangement was billing on an hourly basis and further, that the percentage of Mr. Ray's time devoted to Wassick matters was less than ten percent. Consequently, as Appellee Wassick suggests, Westover's decision not to question Mr. Ray as to the billing and fee arrangements may have been prompted by its inability to impeach Mr. Ray on this issue, rather than its purported reason that inquiry would have been pointless due to the trial court's quashing of its subpoena.

**17.** Appellee Wassick easily distinguishes the *Moats* decision as that case involved an attorney who refused to answer questions posed to him while on the witness stand regarding his fee. A subpoena duces tecum was then served upon him which the trial court refused to quash. *See* 18 W.Va. at 644. That decision is undeniably inapposite as the attorney in this case—Mr. Ray—was never even asked a question while on the stand concerning his billing and fee arrangements.